JAMES D. THOMAS, APPELLEE, v. JOHN A. FLYNN, APPELLANT, IMPLEADED WITH RALPH K. COTTON ET AL., APPELLEES.

100 N. W. 2d 37

Filed December 18, 1959. No. 34662.

*Ross & O'Connor,* for appellant.

*Martin A. Cannon,* for appellee Thomas.

*John C. Burke,* for appellees Cotton et al.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

On July 17, 1958, James D. Thomas brought this action in the district court for Douglas County against John A. Flynn, Ralph K. Cotton, Samuel Howell, Treasurer of Douglas County, and Douglas County. The purpose of the action is to have declared null and void a certain "Treasurer's Tax Deed" from the county treasurer of Douglas County to defendant Ralph K. Cotton, insofar as such deed seeks to convey to Cotton Lot K, Kincade Survey, a subdivision of Section 14, Township 15 North, Range 13 East of the 6th P.M., in Douglas County, Nebraska, as surveyed, platted, and recorded, to which tract we shall hereinafter refer as Lot K; to authorize plaintiff to redeem Lot K from the tax sale thereof; and for an order finding plaintiff to be the sole owner of Lot K. The basis on which this relief is asked is that the tax deed to Cotton is void as to Lot K because the notice required by section 77-1831, R. R. S. 1943, which section 77-1832, R. R. S. 1943, requires

"shall be made on every person in actual possession or occupancy of the land" for which a tax deed is intended to be asked, was never served upon the plaintiff or his predecessors in title who, it is claimed, were at all times in actual possession and occupancy of Lot K as the owners by reason of adverse possession.

Answer was filed by the defendant John A. Flynn wherein he claims he is the owner of Lot K, title thereto having been quieted in him on April 13, 1954, by decree rendered by the district court for Douglas County, Nebraska, of which, he alleges, plaintiff and his predecessors in interest had knowledge for over 2 years prior to the institution of this suit. Plaintiff replied to this contention, alleging that neither he nor his predecessors in title were ever made parties to that action nor was any service of summons ever had upon him or any of them, although they were in actual possession and occupancy of Lot K at all times pertinent to defendant Flynn's action to quiet title.

The trial court found generally for the plaintiff and rendered a decree accordingly, holding the treasurer's tax deed as to Lot K to be null and void; that plaintiff's rights to Lot K were not affected by defendant Flynn's action to quiet title; that there was due defendant John A. Flynn the sum of $251.39 for taxes he had paid, upon payment of which Lot K should stand redeemed from tax sale; that the sum of $326.76, deposited by the plaintiff with the clerk of the court for the purpose of being used to redeem Lot K from the tax sale, could be used to pay the amount found due to Flynn; and that plaintiff is the sole owner of Lot K. Defendant Flynn filed a motion for new trial and this appeal was taken by him from the overruling thereof.

Primarily there are two questions raised by this appeal. First, did Ralph K. Cotton sufficiently comply with the statutory requirements in obtaining his treasurer's tax deed to Lot K so as to divest the Thomases of their rights to redeem from the tax sale thereof as

section 77-1824, R. R. S. 1943, provides they may; and secondly, did appellant, in his action to quiet title, obtain jurisdiction of the Thomases so as to divest them of whatever rights or interests they then had in and to Lot K?

The burden of proof was on appellee. This is particularly true in view of the provisions of section 77-1842, R. R. S. 1943. This being an action in equity, it is the duty of this court to try the issues de novo and reach an independent conclusion as to the merits thereof without reference to the findings of the district court. § 25-1925, R. R. S. 1943. However, as stated in Jack v. Teegarden, 151 Neb. 309, 37 N. W. 2d 387: " '* * * in a case wherein the trial court has made a personal examination of the physical facts (which the trial court did here), and where, in the same case, the oral evidence in respect of material issues is so conflicting that it cannot be reconciled, this court will consider the fact that such examination was made and that such court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite.' "

The foregoing has particular application to the testimoney of Stella Thomas as to the condition of the property after the flood in April of 1952 and what was thereafter done thereto and thereon by the Thomases to put everyone on notice that the property was actually occupied by someone claiming rights therein and that of Robert E. O'Connor, attorney at law for Ralph K. Cotton, as to what he saw and found out when he examined the property shortly before making an affidavit in Cotton's behalf upon the basis of which notice, as provided for by section 77-1834, R. R. S. 1943, was published in The Daily Record of Omaha.

Ben Thomas and Stella Thomas, being then husband and wife, moved onto Lot K about September 1, 1926. At that time their family consisted of a daughter, Stella Opal, about 4 years of age, and a son, appellee James

D. Thomas, about 1 year old. There was a two-room dwelling on the property.

When they first moved onto these premises the Thomases did so under an oral agreement of purchase with a party who claimed to be the owner thereof. Shortly thereafter the Thomases came to the conclusion that the seller was a phony and actually had no interest in Lot K. Thereafter they made no further payments under the oral agreement but continued to occupy the premises as their home. They built substantial additions to the house, adding a bedroom, a kitchen, and a porch thereto. They also raised the house, dug a basement thereunder, and put it on a permanent concrete and stone foundation. The record shows they improved the house until it was a very good home considering the area in which it was located, being along the Missouri River and east of the dike along the west side thereof; that is, it was in the flood basin of the Missouri River. They built and maintained fences along both the north and south sides of Lot K. The Thomases continued to live on this property and make it their home until forced to vacate it by a flood in April of 1952.

"The title to land becomes complete in the adverse occupant when he and his grantors have maintained an actual, continued, notorious, and adverse possession thereof, claiming title to the same against all persons, for ten years." Walker v. Bell, 154 Neb. 221, 47 N. W. 2d 504.

We think the record established that by adverse possession the Thomases became the owners of Lot K sometime in 1937 and continued to be such although the flood forced them from the premises in April of 1952. Ben Thomas died intestate on March 15, 1958. The Thomas family has always consisted of the father, mother, and two children hereinbefore referred to. After the father died the mother and daughter, on July 15, 1958, quitclaimed to the son, appellee herein, what-

ever interest they had in and to Lot K. In this situation the following principle applies to appellee: "If the adverse possession of the occupant is a continuation of the possession of a prior adverse possessor claiming title, and such occupant claims title from such prior possessor, then the possession of the occupant may be tacked to that of such prior possessor." Walker v. Bell, *supra.*

In 1946 Lot K was, for the first time, listed and assessed for the purpose of taxation. It was assessed in the name of John Doe, there being no owner thereof listed in the records of Douglas County at that time. Taxes were levied thereon for that and all subsequent years. The taxes assessed and levied on Lot K for the years 1946 and 1947 became delinquent and were there-after, on July 20, 1949, sold to the County of Douglas and subsequently, on September 16, 1952, the "Certificate of Tax Sale" issued to the county was assigned by the county treasurer of Douglas County to Ralph K. Cotton, he having paid the amount of taxes, with interest owing thereon, as shown on the face of the certificate. See § 77-1809, R. R. S. 1943.

The flood of April 1952, which forced the Thomases to vacate their home, came up so quickly that they had to vacate by boat and could only take with them dishes, bedding, and personal apparel. They were forced to leave all their furniture in the house. The water came up so high that only the roof of the house remained out of the floodwaters. The floodwaters tore the two outer doors from the house and carried away some of the furniture. It saturated the walls with muddy water and left mud all over the floor of the house and in the basement. After the flood the Thomases intended to return to the home to live but found, because of the condition in which the flood had left the house and due to the poor health of Mr. Thomas, it was not possible for them to do so. It appears that Mr. Thomas

was at that time having some kind of trouble with his lungs from which condition he ultimately died.

After the flood had receded the American National Red Cross, in May 1952, employed a Mr. Beaver at a cost of $100 to remove the mud from the Thomas house; wash down the walls, ceiling, and woodwork; clean the windows; and scrub the floors. This he did. Although this had been done the Thomases felt it was not desirable to move back because of dampness in the house and the odor from the conditions left by the flood. They did, however, put the two outside doors back on their hinges and then locked them with padlocks, their furniture being in the house. When they left their home, due to the flood, the Thomases rented a two-room apartment at 2022 Webster where they continued to live for some years when they moved to 2114 Cuming. However, they frequently returned to their old home to try to clean it up, there being rubbish, which the flood had left, all over the place. They also took back some of their dishes that they didn't need in the apartment they had rented. They also put a sign on the door showing their name, address, and telephone number. The evidence shows it was always their intention to return to their home when the condition of the property had been restored to normal and the father's health would permit. This, of course, never happened because his health was never restored prior to his death.

The title to Lot K never appeared of record in the name of the Thomases in the register of deeds office of Douglas County. Section 77-1832, R. R. S. 1943, provides, insofar as here material, as follows: "Service of the notice provided by section 77-1831 shall be made on every person in actual possession or occupancy of the land, * * * if, upon diligent inquiry, he can be found in the county." Failure to serve such notice makes such deed void. Thomsen v. Dickey, 42 Neb. 314, 60 N. W. 558.

We said in Parsons v. Prudential Real Estate Co., 86 Neb. 271, 125 N. W. 521, 44 L. R. A. N. S. 666, that: "The terms 'occupant' or 'actual occupant' are not always susceptible of precise definition. Their meaning may vary according to the context. The idea which the lawmakers intended to convey must be gathered from a consideration of the purpose of the constitutional provisions, and of the statutes in which the terms are used, as well as from the ordinary definitions given by lexicographers. Ordinarily the occupant or actual occupant of land is one in the actual possession of the premises. 'Occupant' is defined in the Century dictionary as: 'One who occupies; an inhabitant; especially, one in actual possession, as a tenant, who has actual possession, in distinction from the landlord, who has legal or constructive possession.' The Standard definition is: 'One who occupies; especially, a tenant in possession of property, as distinguished from the actual owner.' Quoting from Cutting v. Patterson, 82 Minn. 375, ' "Actual occupancy" is defined as an open, visible occupancy, as distinguished from the constructive possession which follows the legal title. "Actual possession" has practically the same meaning. It means possession in fact, effected by actual entry upon the premises and actual occupancy. * * * Black, Law Dict. 29, 30. The same definitions are found in 2 Bouvier, Law Dict. 254, 349.' "

In Kuska v. Kubat, 147 Neb. 139, 22 N. W. 2d 484, in construing Parsons v. Prudential Real Estate Co., *supra,* we said: "In construing the Constitution and applicable statute, it was held that 'occupants' and 'actual possession or occupancy' were synonymous and meant actual, open, visible possession or occupancy in fact, exactly that and nothing less, as distinguished from constructive possession. It was also held that the actual possession or occupancy must be by one claiming an interest in the property either in privity with or adversely to the owner as distinguished from a mere trespasser." See, also, Durfee v. Keiffer, 168 Neb. 272, 95 N. W.

2d 618; Quist v. Duda, 159 Neb. 393, 67 N. W. 2d 481.

Actual occupancy or possession is always involved in any claim to land by adverse possession. As stated in Purdum v. Sherman, 163 Neb. 889, 81 N. W. 2d 331:. "The claim of title to land by adverse possession must be proved by actual, open, exclusive, and continuous possession under a claim of ownership for the statutory period of 10 years." As stated in Worm v. Crowell, 165 Neb. 713, 87 N. W. 2d 384: "The possession is sufficient if the land is used continuously for the purpose to which it may be in its nature adapted. See, James v. McNair, *supra;* Walker v. Bell, 154 Neb. 221, 47 N. W. 2d 504. As stated in Walker v. Bell, *supra:* '* * * Ordinarily the law does not undertake to specify the particular acts of occupation by which alone title by adverse possession may be acquired since the existence and establishment of the continuity must necessarily depend greatly on the circumstances of each case, and the use to which the property is adapted, the actual manner of its use, the circumstances of the occupant, and to some extent his intention must be considered. * * *.' " And, as stated in James v. McNair, 164 Neb. 1, 81 N. W. 2d 813: "The law does not require that possession shall be evidenced by a complete enclosure, nor by persons remaining continuously upon the land and constantly from day to day performing acts of ownership thereon. It is sufficient if the land is used continuously for the purposes to which it may be in its nature adapted." See, also, Ferber v. McQuillen, 99 Neb. 280, 156 N. W. 506; Lantry v. Parker, 37 Neb. 353, 55 N. W. 962.

We think "in actual possession or occupancy," as contained in section 77-1832, R. R. S. 1943, means such occupancy or possession by a person as would put an ordinarily prudent man on notice of that fact by observation of the premises involved. Here the record establishes that someone was actually occupying or in possession of Lot K at the time application for the

tax deed was made and any reasonable investigation and inquiry would have disclosed that it was the Thomases who were occupying and in possession thereof. No notice of the fact that Cotton was going to apply for a tax deed to Lot K, under and pursuant to the certificate of tax sale he held thereon, was ever served upon the Thomases, or either of them. In view of that fact the tax deed obtained by Cotton to Lot K was null and void and consequently the Thomases, or their successors in title, have a right to redeem from such tax sale and from all subsequent taxes assessed and levied on Lot K and paid by the holder thereof.

It is true that service by publication was had on certain named parties, not including the Thomases, pursuant to affidavit of Robert E. O'Connor filed in behalf of Robert K. Cotton. Robert E. O'Connor testified as to what he did as a basis for making the affidavit. However, neither the affidavit nor notice contained the name of Ben or Stella Thomas. In the absence thereof it was without force and effect as to the Thomases, and their successors in title, as to their rights in and to Lot K because, as we have already said, the Thomases were in actual occupancy and possession of said lot within the meaning of section 77-1832, R. R. S. 1943, and, consequently, notice was required to be served upon them in order to divest them of their right to redeem.

On April 14, 1953, an action was instituted in the district court for Douglas County by Ralph K. Cotton for the purpose of quieting title in him to Lot K and other properties located in Kincade Survey and covered by his treasurer's tax deed. Appellant was substituted as plaintiff therein because Cotton had, by special warranty deed, conveyed these premises to him. A decree was rendered therein in favor of appellant on April 13, 1954, quieting title in him to Lot K along with many other lots in Kincade Survey. The Thomases were never made parties defendant in this action, although their occupancy and possession of Lot K, as here-

inbefore described, continued at all times during the pendency of this action, up to and including the date when the decree was rendered. However, "all persons having or claiming any right, title or interest to all of Lots * * * K, * * * of Kincade's survey * * * real names unknown" were made parties thereto and served by publication pursuant to affidavit of appellant's counsel and an order of the court.

In this regard appellant states in his brief as follows: "By the provisions of Section 25-321, R. R. S. 1943, the proof of service of publication, in accord with Sections 25-517 and 25-518, R. R. S. 1943, is conclusive against all persons except those in actual possession of the property and whose ownership of, interest in, right or title to, or lien upon such property, does not appear of record."

In this respect, insofar as here material, section 25-321, R. R. S. 1943, provides: "Judgments and decrees against persons so designated and made defendants and served by publication as herein provided shall be conclusive as against all persons who are not in actual possession of such property, and whose ownership of, interest in, rights or title to, or lien upon such property does not appear of record in or by their respective names in the county wherein such property is situated." We interpreted this section in Durfee v. Keiffer, *supra*, as follows: "It will be noted that section 25-321, R. R. S. 1943, in summary requires an allegation in the petition or other pleading that there are persons who claim to have some interest in the property; that it does not appear of record; that diligent investigation and inquiry have been made; and that the person in whose behalf the investigation has been made does not know the names, whereabouts, or residence of such persons. Section 25-518, R. R. S. 1943, requires an affidavit supporting the allegation. Section 25-517, R. R. S. 1943, requires a court order for service by publication after the court is satisfied that sufficient investigation has been made. It is obvious that such a procedure was intended to

establish a 'conclusive' record in accord with the facts shown and established to the satisfaction of the court, as against all persons except those 'in actual possession' (section 25-321, R. R. S. 1943), whose interest in the property does not appear of record." See, also, Jurgensen v. Ainscow, 155 Neb. 701, 53 N. W. 2d 196; § 25-21,113, R. R. S. 1943.

In view of the facts hereinbefore set forth we do not think the appellee and his predecessors were precluded from their right to redeem from the tax sale by the decree rendered in the action to quiet title because they were never made parties thereto, they being in actual possession thereof under claim of ownership which did not appear of record in their respective names in Douglas County.

Appellant further contends that: "Proceedings to vacate or modify a Judgment or Order, for the causes mentioned in Section 25-2001, Subdivision (4), must be commenced within two years after the Judgment was rendered or Order made, or where fraud is alleged, within two years from the discovery of the fraud." In this respect, section 25-2001, R. R. S. 1943, provides: "A district court shall have power to vacate or modify its own judgments or orders after the term at which such judgments or orders were made * * * (4) for fraud practiced by the successful party in obtaining the judgment or order; * * *." Section 25-2008, R. R. S. 1943, provides, insofar as here material, that: "Proceedings to vacate or modify a judgment or order, for the causes mentioned in section 25-2001, subdivisions (4), * * * must be commenced within two years after the judgment was rendered or order made, * * *."

Appellee became aware of the fact that appellant had brought an action to quiet title against Lot K more than 2 years before bringing this action and, at the time he became aware thereof, advised his father of that fact. But this cause is not based on fraud but upon

lack of jurisdiction and these statutes and the cases cited by appellant are not in point.

We have come to the conclusion that the trial court was correct in rendering the judgment that it did and therefore affirm its action in doing so.

AFFIRMED.