DOROTHY MACK, APPELLANT, V. PAULINE D. LUEBBEN
ET AL., APPELLEES.

341 N.W.2d 335

Filed December 9, 1983. No. 82-547.

Michael W. Ellwanger of Kindig, Beebe, Rawlings, Nieland & Killinger, for appellant.

Smith, Smith & Boyd, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and GRANT, D.J.

BOSLAUGH, J.

This appeal arises from an action by Dorothy Mack to quiet title to 15 acres of land located in Dakota County, Nebraska. Mack claimed ownership by virtue of a treasurer's tax deed. Defendants Orville and Pauline Luebben and Oscar and Charlene Stone filed a cross-petition claiming ownership by adverse possession and requesting that title be quieted in them. Other defendants did not appear. Following trial, the court quieted title in Pauline Luebben subject to the conjugal rights of her husband and subject to the contractual rights of the Stones. Mack appeals.

The legal description of the property at issue is the east 15 acres of the southeast quarter of the northwest quarter of Section 24, Township 29 North, Range 8 East, of the 6th P.M., Dakota County, Nebraska. The land is located just south of the Missouri River and is separated from the river by several acres of accretion ground. The 15 acres are otherwise surrounded by two farms owned by Oscar Stone. There is no road access to the 15 acres, and in order to reach it one must cross the land owned by Stone. A lane which had been used as a road was plowed under in the early 1950s when George Sohn, the defendants' predecessor in title, acquired the land upon which the lane was located.

The evidence shows that the McKernan family lived upon the 15 acres from the early 1920s to 1952, with some absences of short duration. The McKernans ceased living there in 1952, although they paid taxes on the property for several years after 1952. In the early 1950s defendants' predecessor in title, George Sohn, acquired the farm which surrounds the 15 acres on the west and the south and began using the 15 acres for farming purposes. Sohn continued to farm the 15 acres until his death in 1974. Upon his death the fee simple title was acquired by Sohn's wife, Pauline, now Pauline Luebben. In 1976 Pauline Sohn sold the 15 acres and the surrounding farm, through a land contract, to her daughter and son-in-law, Charlene and Oscar Stone. Stone has farmed the tract since 1974. Stone recently acquired the farm which lies directly east of the tract.

The plaintiff, Dorothy Mack, is a niece of the McKernans. On November 6, 1967, Mack obtained a treasurer's certificate of tax sale to the 15 acres when the land was sold for the delinquent taxes for 1965 and 1966. Following publication of notice, she obtained a treasurer's tax deed on April 16, 1971, which she recorded the same day. The record also shows that Mack had obtained a quitclaim deed to the 15 acres from Ross McKernan, which she re-

corded on April 21, 1970. On April 26, 1971, Mack served notice of her ownership on the Sohns. Mack testified that she used the land for recreational purposes in the 1970s.

On March 18, 1970, George Sohn paid the delinquent taxes on the property for the years 1965 and 1966, and obtained a treasurer's redemption certificate. This was a redemption of the property from the sale to Mack. Stone has continued to farm the 15 acres until the present time. Mack filed this action on February 11, 1981.

On appeal Mack argues that the defendants did not prove that they had acquired title through adverse possession and thus had no right to redeem from the tax sale to Mack. Alternatively, Mack contends that even if the defendants had a right to redeem the property, their claims against the treasurer's tax deed held by Mack are barred by the statute of limitations, Neb. Rev. Stat. § 77-1855 (Reissue 1981).

An action to quiet title is an action in equity and is considered de novo in the Supreme Court. *Bartlett v. Kloepping*, 195 Neb. 755, 240 N.W.2d 592 (1976); Neb. Rev. Stat. § 25-1925 (Reissue 1979). It is the duty of the Supreme Court to reach an independent conclusion without reference to the findings of the District Court. *Pokorski v. McAdams*, 204 Neb. 725, 285 N.W.2d 824 (1979). One seeking to have title quieted in himself is required to recover on the strength of his own title and not on the weakness of his adversary's title. *Beren Corp. v. Spader*, 198 Neb. 677, 255 N.W.2d 247 (1977); *Bode v. Flobert Industries, Inc.*, 197 Neb. 488, 249 N.W.2d 750 (1977), *rev'd on other grounds* 211 Neb. 757, 320 N.W.2d 463 (1982). One claiming title through adverse possession may maintain an action to quiet title. *Tourtelotte v. Pearce*, 27 Neb. 57, 42 N.W. 915 (1889).

The evidence in the present case shows that the Sohns and Stones acquired ownership of the 15 acres through adverse possession. One who claims owner-

ship by adverse possession must prove by a preponderance of the evidence that he has been in actual, continuous, exclusive, notorious, and adverse possession under a claim of ownership for a period of 10 years. *Berglund v. Sisler*, 210 Neb. 258, 313 N.W.2d 679 (1981); Neb. Rev. Stat. § 25-202 (Reissue 1979). The evidence here is that Stone and his predecessor in title farmed the 15 acres continuously for a period of almost 30 years. During this time, the McKernans failed to exercise their rights to the property. Under such circumstances the defendants acquired ownership to the 15 acres. See, e.g., *Cunningham v. Stice*, 181 Neb. 299, 147 N.W.2d 921 (1967); *Dunnick v. Stockgrowers Bank of Marmouth*, 191 Neb. 370, 215 N.W.2d 93 (1974). After the running of the statute an adverse possessor has an indefeasible title which can only be divested by his conveyance of the land to another, or by a subsequent disseisin for the statutory period. *Hendrickson v. Glaser*, 204 Neb. 492, 283 N.W.2d 41 (1979).

Neb. Rev. Stat. § 77-1824 (Reissue 1981) provides: "The *owner or occupant of any land sold for taxes* or any person having a lien thereupon or interest therein, *may redeem the same at any time before the delivery of tax deed* by the county treasurer by paying the county treasurer for the use of such purchaser, his or her heirs or assigns, the sum mentioned in his or her certificate, with interest thereon at the rate specified in section 45-104.01, as such rate may from time to time be adjusted by the Legislature, from the date of purchase to date of redemption, together with all other taxes subsequently paid, whether for any year or years previous or subsequent to said sale, and interest thereon at the same rate from date of such payment to date of redemption." (Emphasis supplied.) It is clear from the evidence in this case that defendants were owners of the 15 acres through adverse possession and were entitled to redeem the property from the ·tax sale to Dorothy Mack, pursuant to the provisions of

§ 77-1824. See *Thomas v. Flynn*, 169 Neb. 458, 100 N.W.2d 37 (1959).

The evidence shows that Sohn redeemed the property before the tax deed was delivered to Mack. The redemption thus inured to the benefit of the defendants, as they claim through Sohn and are the persons having legal or equitable title to the property redeemed. Neb. Rev. Stat. § 77-1828 (Reissue 1981).

Proof of such redemption defeats any title conveyed by the tax deed. Neb. Rev. Stat. § 77-1843 (Reissue 1981). Furthermore, Neb. Rev. Stat. § 77-1845 (Reissue 1981) provides that a treasurer's deed issued as a result of a tax sale "shall not convey the title" if the owner has paid his taxes and the sale was made through a mistake made in the treasurer's books. The effect of the statute is to declare the deed to Mack void, since it was issued erroneously after redemption had occurred. The tax deed held by Mack was void and did not convey title to her, because the equitable owner had redeemed the property.

Mack's contention that the defendants were barred by Neb. Rev. Stat. § 77-1855 (Reissue 1981) from quieting title to the property as against her is without merit. The statute purports to bar actions for the recovery of real estate sold for the nonpayment of taxes 5 years after the execution and recording of a treasurer's deed. Mack was not in possession and the deed was absolutely void.

It is generally held that possession under the deed is essential to asserting the bar of such so-called "short" statutes of limitation. 72 Am. Jur. 2d *State and Local Taxation* § 1057 (1974). In *Baldwin v. Merriam*, 16 Neb. 199, 201, 20 N.W. 250, 251 (1884), this court said: "Even if the deeds had been valid on their face the statute would not commence to run in favor of the holder until he took posession. . . . If a party claims under a tax deed and invokes the aid of

the special statute of limitations he must bring himself within the rule as to adverse possession.''

Where the tax deed is regular on its face but void for a jurisdictional defect, the generally accepted rule is that a special or ''short'' statute of limitations does not apply. 72 Am. Jur. 2d *State and Local Taxation* § 1054 (1974).

Where the taxes have actually been paid at the time of the sale, the defect is considered jurisdictional. The decided weight of authority is to the effect that a purchaser at a tax sale which is void because the taxes in fact have been paid does not acquire title under the void deed by possession for the period of a ''short'' statute of limitations. Annot., 26 A.L.R. 622 (1923).

In *Wells v. Bloom*, 96 Neb. 430, 147 N.W. 1112 (1914), the plaintiff alleged the defendant's tax deed was void because the defendant had failed to comply with the statutory provision regarding notice of the expiration of the period of redemption. Although the defendant had been in possession for more than 6 years, this court held that the plaintiff could redeem at any time within 10 years. The opinion states at 434, 147 N.W. at 1113-14: ''We therefore hold that the rights of the parties in this case must be determined under the revenue law of 1901 (chapter 77, art. I) in force at the time defendant purchased the land in controversy at tax sale and obtained his tax sale certificate. This being true, then, under the facts pleaded in plaintiff's petition as above set out, which are expressly admitted by the demurrer, defendant's tax deed is void and conferred upon him nothing more than color of title. Plaintiff, therefore, had a right to proceed to quiet his title and to redeem at any time within ten years. Having proceeded within that period, the court erred in sustaining the demurrer and dismissing the suit.''

Upon similar facts in *Lanigan v. Gilroy*, 97 Neb. 754, 757, 151 N.W. 297, 298 (1915), this court said: ''If it be said that the tax deeds in question, when con-

sidered apart from the evidence on which they were executed, are valid on their face, they are nevertheless void, and the grantee acquired no rights by reason of their execution. *Stewart v. Ridenour, ante* p. 451; *Peck v. Garfield County*, 88 Neb. 635; *Thomsen v. Dickey*, 42 Neb. 314; *State v. Gayhart*, 34 Neb. 192." See, also, *Brokaw v. Cottrell*, 114 Neb. 858, 211 N.W. 184 (1926).

The order quieting title in the defendants was correct. The judgment is affirmed.

AFFIRMED.

WHITE, J., concurs in the result.

KRIVOSHA, C.J., concurring in the result.

I concur in the result reached by the majority herein and write separately because I believe that while the result reached by the majority is correct, they have injected a concept which is incorrect. I specifically refer to that portion of the majority opinion which provides that the deed issued to Mack was void because of the treasurer's error and therefore the provisions of Neb. Rev. Stat. § 77-1855 (Reissue 1981) have no application. I do not believe that that is the case.

Section 77-1855 has been a part of the Nebraska statutes since before 1903. Early decisions based on the forerunner of § 77-1855 made it clear that one is to determine the validity of the deed for the purposes of § 77-1855 based upon whether the deed is "void on its face." If the deed is not void on its face but merely voidable, as in the present case, then the statute applies. In one of the very early cases we said: "A tax deed must be valid *on its face* to entitle the party claiming under it to the benefit of the special limitation of the revenue law." (Emphasis supplied.) (Syllabus of the court.) *Bendexen v. Fenton*, 21 Neb. 184, 31 N.W. 685 (1887). See, also, *Housel v. Boggs*, 17 Neb. 94, 22 N.W. 226 (1885). That has been the standard applied by this court since that time. See, also, *Sherlock v. Gillis*, 108 Neb. 72, 187 N.W. 812 (1922), *overruled on other grounds* in

*Podewitz v. Gering Nat. Bank*, 171 Neb. 380, 106 N.W.2d 497 (1960); *Lanigan v. Gilroy*, 97 Neb. 754, 151 N.W. 297 (1915); *Opp v. Smith*, 102 Neb. 152, 166 N.W. 265 (1918). If, indeed, the tax deed in this case was void because it was issued by reason of a mistake made in the treasurer's books, not appearing on the face of the deed, then the provisions of § 77-1855 apply.

The majority, however, is correct in its conclusion because, in addition to acquiring a deed valid on its face, one further requirement is imposed before the provisions of § 77-1855 apply. That requirement is that the claimant must be in *actual* possession of the land. In *Baldwin v. Merriam*, 16 Neb. 199, 201, 20 N.W. 250, 251 (1884), this court held: "Even if the deeds had been valid on their face the statute would not commence to run in favor of the holder until he took possession. A party in actual possession of real estate cannot be ousted from such possession or his title divested by merely recording a tax deed of which he may not be aware and under which nothing is claimed. If a party claims under a tax deed and invokes the aid of the special statute of limitations he must bring himself within the rule as to *adverse possession.*" (Emphasis supplied.) The evidence in this case is clear that Mack could not bring herself within the rules regarding adverse possession because whatever possession she may have had with regard to the property, and the evidence is less than clear, it was not possession by actual, open, *exclusive*, and continuous possession, and therefore was not sufficient to invoke the provisions of § 77-1855.