CLEM R. POKORSKI, APPELLEE, V. WILLIAM W.
MCADAMS ET AL., APPELLEES, IMPLEADED WITH RAYMOND
L. OLSON ET AL., APPELLANTS.

285 N. W. 2d 824

Filed November 13, 1979.   No. 42346.

James T. Gleason of Collins & Gleason, L. J.
Tierney of Cassem, Tierney, Adams, Gotch & Doug-
las, for appellants.

William J. Tighe, for appellee Pokorski.

Heard before KRIVOSHA, C. J., BOSLAUGH, MCCOWN,
CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Defendants, Raymond L. Olson and Judy A. Olson,
appeal from a decree entered by the District Court
for Burt County, Nebraska, quieting title to an ir-
regular tract located in Sections 14 and 15, Township
23 North, Range 11 East of the 6th P.M., in Burt
County, Nebraska.   Although William W. McAdams
and his wife were originally made parties defendant
to the action, they were voluntarily dismissed with
prejudice by the plaintiff prior to trial, and are not
appellants herein.   In its decree the District Court
found that the plaintiff, Clem R. Pokorski (herein-

after referred to as Pokorski), and his predecessors in title, had acquired legal title to the area in question by adverse possession for the statutory period of time. The District Court quieted title to the property in Pokorski, and further dismissed the Olsons' counterclaim for damages. We reverse in part and affirm in part.

The irregular tract to which the court quieted title consisted of 50.37 acres. However, the dispute between the parties involved in this appeal only concerns a tract consisting of 36.39 acres between the designed channel and the high bank of the Missouri River (hereinafter referred to as River), located in Section 14. In order to understand the controversy, we have prepared a sketch of the area involved which, however, is only approximately correct and is used for illustrative purposes only.

While various formations, identified in the evidence as islands and sandbars, later appeared, the record is clear that the area was at least partially covered with water from the date of the installation of the dikes until the date of trial, March 1978. The use of the tract prior to the time of trial was recreational in nature, primarily for hunting and fishing purposes.

The evidence adduced at trial may be summarized as follows. The Corps of Engineers, in an attempt to stabilize and channelize the River, arranged for the construction and installation of dikes 737.7 and 737.9, shown on the sketch referred to. As shown, dike 737.7 was connected to the high bank of the River in Section 14 on land owned by the Olsons' predecessor in title, William W. McAdams (hereinafter referred to as McAdams). Dike 737.9 was connected to the high bank of the River at a point upstream from the land owned by Pokorski's predecessor in title to Lot 12, Melvin Stillman (hereinafter referred to as Stillman). Lot 12 is an 8-acre tract located in Section 15, adjacent to McAdams' land and extending approximately 380 feet along the high bank to the west of the dividing line between Sections 14 and 15. The dikes were completed in the fall of 1963, and thereafter, from that date until the date of trial, material was deposited by the River in the area between the dikes, eventually forming sandbars and islands.

Stillman, who was the record owner of Lot 12 at the time of the installation of the dikes until August 19, 1974, testified that he had used the "island" to fish on since the time of its formation. However, he could not state exactly when this commenced. He further indicated that the "island" had been formed sometime between 1963 and 1965. His son-in-law, James Reno, who was the record owner of Lot 12 and all accretions thereto from August 19, 1974, to December 20, 1974, testified that in 1963 he hunted on a sandbar formed at the end of dike 737.9, the upstream dike. He further testified that he hunted and

fished in this area from that time until the time of trial. Pokorski testified that he had hunted "in the area" in 1964, and from 1967 until the date of trial.

Sometime after 1964, Stillman commenced leasing Lot 12 to various persons to use as cabin and trailer house sites. He gave his tenants permission to hunt in the area between the dikes. We shall not repeat in detail the testimony of Pokorski's other witnesses at the trial. Suffice it to say they testified they had hunted in the area from sometime after 1964 until the date of trial.

As previously stated, the trial court found generally for Pokorski and against the Olsons. Title to the tract was quieted in Pokorski, and a counterclaim for damages filed by the Olsons was dismissed. On appeal to this court, the Olsons assign as error that the findings of the trial court were contrary to the law and contrary to the evidence.

An action to quiet title to real estate is an equitable action and is tried de novo on appeal. § 25-1925, R. R. S. 1943; Neylon v. Parker, 177 Neb. 187, 128 N. W. 2d 690 (1964). In such action it is the duty of this court to reach an independent conclusion without reference to the findings of the District Court. One who claims title by adverse possession must prove by a preponderance of the evidence that he has been in actual, continuous, exclusive, notorious, and adverse possession under claim of ownership for a full period of 10 years. Barnes v. Milligan, 200 Neb. 450, 264 N. W. 2d 186 (1978). A review of the record convinces us that Pokorski has not met this burden.

Pokorski claims adverse possession of a tract which was partially covered with water. While we have held that title to an island in a stream which would normally belong to a riparian owner may be acquired by adverse possession, Burket v. Krimlofski, 167 Neb. 45, 91 N. W. 2d 57 (1958), we have never specifically passed upon the question of whether land covered by water was subject to adverse pos-

session, although we recognize that at least some jurisdictions do permit it. It is clear, however, that the problems involved in proving possession and use for the full statutory period with respect to land covered by water would be most difficult to resolve as a practical matter, if not impossible. While the evidence in the record may possibly be interpreted as indicating a claim of Pokorski to an island, we believe it falls far short of establishing any claim by him of property underlying the water surrounding an island. There is absolutely no evidence to indicate that the "island" and any accretion thereto covered the *entire* area to which the title was quieted by the trial court. As a matter of fact, the record reveals that a part of the area to which title was quieted in Pokorski was located on the high bank in Section 14, adjacent to Lot 12. It would obviously be impossible for any portion of the accretion to the "island" to be located on the high bank, and the record is clear that Pokorski at no time attempted to possess that area. We believe the District Court erred in quieting title to the entire tract; and the most that can be said is that Pokorski may have proved adverse possession to an "island."

However, an examination of the record convinces us that Pokorski has even failed to establish by evidence his claim of adverse possession to an "island." In order to prove adverse possession, it is necessary that the claimant prove that the possession was actual, open, exclusive, and continuous for a period of 10 years. Barnes v. Milligan, *supra*. Pokorski obtained record title to the property on December 20, 1974, by virtue of a deed to him from James Reno. Pokorski claims his predecessors in title had obtained adverse possession for the full statutory period prior to their deed to him, and had established their title to the tract by adverse possession by November of 1974. Assuming this to be true, adverse possession by his predecessors in title must

have been commenced not later than November of 1964, in order for the full 10-year period to run. The record is unclear and inconclusive as to when the "island" was formed. Stillman could do no more than place it somewhere between 1963 and 1965, and further testified that the "island" was, during certain periods, covered by water. James Reno testified that he hunted on a sandbar in 1963 and 1964. However, whether the sandbar he hunted on was the same land mass as the "island" to which Stillman referred is not established. Photographs introduced in evidence as exhibits do no more than show what appears to be sandbars in existence as of October 1963. A subsequent photograph, taken in 1965, clearly shows several islands in existence. Likewise, the most recent aerial photograph, taken in 1971, clearly reveals at least four separate and distinct islands located in the area in controversy. Moreover, no photograph or other evidence establishes that the sandbar or island at the end of dike 737.9, which Reno testified he hunted on, was ever connected to any of the other islands. Also, no evidence was introduced to identify or distinguish the island that Stillman was referring to in his evidence. As revealed by the record, the earliest indication of any islands which might have been capable of being adversely possessed was in September of 1965. The record reveals that McAdams caused a fence to be placed along the section line between Sections 14 and 15 in December of 1974; therefore it is clear that in order for the 10-year statute of limitations to run, Pokorski's predecessors in title would have had to begin their adverse possession by December of 1964. However, there is no persuasive evidence that there was any land present at that time which was subject to adverse possession. Pokorski testified on direct examination, in response to a question presented to him as to where the land was and how it grew, as follows: "In *1978* the land encompasses a *good area*

on both sides of the dividing line here of 36 39 [the acreage designation of the contested property] and 13 98 [the acreage designation of the area located immediately to the west thereof]." (Emphasis supplied.) It is clear, then, that as late as 1978, the land did not cover the entire area of the tract in dispute between the parties.

In 2A C. J. S., Adverse Possession, § 264, p. 21, the rule is stated: "A claimant of title by adverse possession must further show the extent of his possession, the exact property which was the subject of the claim of ownership, that his entry covered the land up to the line of his claim, and that he occupied adversely a definite area sufficiently described to found a verdict upon the description." Also, in Harvat v. Clear Creek Drainage Dist., 197 Neb. 352, 249 N. W. 2d 209 (1977), this court held that the right to hunt and fish cannot be established by prescription where the use is not exclusive or its extent is too indefinite for a determinate description. We conclude that Pokorski did not establish the extent of his predecessors' possession with sufficient definiteness. This failure to meet his burden of proof upon this issue necessitates a reversal of the decree of the District Court and obviates the necessity of further discussion of other errors assigned by the Olsons with respect to Pokorski's failure to establish all of the necessary elements of adverse possession.

One further matter, however, must be commented upon. As previously stated, the District Court in its decree dismissed the counterclaim filed by the Olsons for damages to their commercial hunting operation. In their counterclaim they alleged that their commercial hunting business had been damaged due to the dispute over the tract and due to the proximity of Pokorski's blind to their operation. While they may not have been able to successfully operate a commercial blind on this land, such fact, even if true, would not establish harm to their entire

commercial operation as alleged in their counterclaim. The record reveals that the Olsons had other areas which they could and did use for commercial hunting purposes. Nowhere in the record is there evidence that they had to turn away any business due to their inability or unwillingness to use the land in Section 14. They simply failed to show that the loss of the use of the land in Section 14 harmed the rest of their operation to any extent. See, El Fredo Pizza, Inc. v. Roto-Flex Oven Co., 199 Neb. 697, 261 N. W. 2d 358 (1978); K & R, Inc. v. Crete Storage Corp., 194 Neb. 138, 231 N. W. 2d 110 (1975). That they were not able to establish a commercial blind on land in Section 14 adjacent to Lot 12 would not amount to proof of damages to their commercial hunting operation, and the trial court was correct in dismissing this counterclaim.

In view of what we have stated above, that part of the decree of the trial court quieting title to the tract in question in Pokorski must be reversed and title to the disputed 36.39 acres is ordered quieted in the Olsons and further, that part of the decree of the trial court dismissing the Olsons' counterclaim for damages should be and hereby is sustained.

AFFIRMED IN PART, AND IN
PART REVERSED.