MARY A. LAYHER, APPELLANT, V.
EARL W. DOVE ET AL., APPELLEES.

301 N.W.2d 90

Filed January 23, 1981.   No. 42984.

Donald H. Weaver of Anderson, Vipperman, Weaver, Hinman and Hall for appellant.

Luebs, Dowding, Beltzer, Leininger & Smith for appellees.

Heard before KRIVOSHA, C.J., McCOWN, and WHITE, JJ., and COLWELL and HUBER, District Judges.

McCOWN, J.

The plaintiff brought this action to quiet title to the south half of a quarter section of farmland and to restrain the defendants from encroaching upon plaintiff's land. The defendants, who were owners of the north half of the quarter section, denied that they had encroached upon plaintiff's land and, by cross-petition, prayed that the boundary line between plaintiff's and defendants' land be established pursuant to Neb. Rev. Stat. § 34-301 (Reissue 1978). The District Court dismissed plaintiff's cause of action and established the boundary line on the line of a survey dated May 2, 1979. Plaintiff has appealed.

The plaintiff is the record owner of the south half of the southwest quarter of Section 7, Township 11 North, Range 11 West of the 6th P.M., in Hall County, Nebraska. The defendants Dove are the record owners of the north half of the same quarter section. Both parties have owned their respective tracts of land for many years. The quarter section involved lies along the east side of Highway 11, a north-south highway. A creek traverses the quarter section, running generally from the southwest to the northeast. There is an entrance to the land from Highway 11 on the west line of the quarter section approximately midway between its north and south boundaries, which has been used as an entrance and driveway for vehicles and machinery entering both plaintiff's and defendants' tracts. The driveway has been located at slightly different places over the years and the location at any specific time or for any specific period of time is uncer-

tain. For some period of time there was a barbed-wire fence which divided the two tracts and ran from the highway easterly to the creek. While the fence was in existence, all parties accepted it as the boundary line, but there is considerable dispute over the exact location of the fence. All that is left of the fence are a few posts on the west bank of the creek. The rest of the fence has decomposed and there was no evidence of it at other places after 1969. There is a direct controversy in the evidence as to whether the fence ran along the north or the south side of the driveway in the western portion of the premises.

In the late 1950's the plaintiff's land west of the creek was leveled and there is testimony that the land was leveled to within 1 or 2 feet south of the old fence. At a point some 100 to 300 feet west of the creek there is a ridge on the defendants' land and the difference in elevation caused by the leveling of plaintiff's land is visible in some places. There is little serious conflict in the evidence regarding the boundary in this area. West of that point the parties each assert that the other has encroached.

In later years, whichever tenant planted first was often charged with encroachment by the other party. There is little apparent difference in elevation in the westerly portion of the land and the evidence fails to support any claim of continuous or exclusive possession of any specific area by either party for the necessary period of time to establish adverse possession.

On May 2, 1979, the defendants had the property surveyed and the surveyors set out lath markers on the boundary line between the north half and the south half of the quarter section. The plaintiff contends that the survey line encroached upon her property and this action followed. The District Court established the boundary line on the line of the survey dated May 2, 1979, and dismissed plaintiff's cause of action.

The basis of plaintiff's claim of title seems to rest on the assertion that the original government survey

boundary was different from the boundary fixed by the survey of May 2, 1979, or that the 1979 survey was somehow improper, incorrect, or defective. The evidence in the record does not support either assertion. The plaintiff failed to introduce any testimony to contradict the survey of May 2, 1979. Neither did the plaintiff's evidence establish any specific boundary line different from the May 2, 1979, survey line, nor establish the boundaries of any area assertedly possessed adversely and exclusively.

One who claims title by adverse possession must prove by a preponderance of the evidence that he has been in actual, continuous, exclusive, notorious, and adverse possession under claim of ownership for a full period of 10 years. A claimant of title by adverse possession must show the extent of his possession, the exact property which was the subject of the claim of ownership, that his entry covered the land up to the line of his claim, and that he occupied adversely a definite area sufficiently described to found a verdict upon the description. *Pokorski v. McAdams*, 204 Neb. 725, 285 N.W.2d 824 (1979). In the present case, no area claimed by adverse possession is sufficiently described to found any verdict upon such a claim.

Section 34-301 authorizes actions in equity to determine boundaries of real estate, the ownership of which is in whole or in part in dispute. When properly pleaded, the theory of adverse possession, as well as the theory of mutual recognition and acquiescence, may be raised under § 34-301. In actions in equity, it is the duty of the Supreme Court to try the issues of fact de novo on the record and to reach an independent conclusion thereon without reference to the findings of the District Court. *Shirk v. Schmunk*, 192 Neb. 25, 218 N.W.2d 433 (1974).

The judgment of the District Court was correct and is affirmed.

AFFIRMED.