ALAN J. BENDER ET AL., APPELLEES, V. JULIA JAMES, APPELLANT, STONES, INC., A NEBRASKA CORPORATION, ET AL., APPELLEES.

321 N.W.2d 436

Filed July 2, 1982. No. 44228.

Stephen C. Hansen of Luckey, Sipple & Hansen, for appellant.

Robert J. Bothe of Tessendorf, Milbourn, Fehringer & Bothe, P.C., for appellees Bender.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

Plaintiffs brought this action in the District Court seeking to quiet title to a strip of farmland included within their record ownership, but which the defendant Julia James claimed by adverse possession. From an order granting plaintiff's motion for summary judgment and granting the relief requested in the petition, the defendant has appealed. We affirm.

The plaintiffs, Alan J., Larry J., and Richard J. Bender, are the record title owners of the south half of the southeast quarter and the west half of the northwest quarter of the southeast quarter, all in Section 20, Township 19 North, Range 3 West of the 6th P.M., Platte County, Nebraska. They acquired title in March of 1979 by warranty deed from Ruth Bearberg, a single person and now deceased. Ruth was a daughter and legal heir of John James, deceased. The defendant Julia James, a widow, is the record titleholder of the east half of the northwest quarter of the southeast quarter and the northeast quarter of the southeast quarter, also in Section 20, Township 19 North, Range 3 West of the 6th P.M., Platte County, Nebraska. In other words, the northern boundary of the plaintiffs' land and the southern boundary of the defendant's land form the same line. Julia's husband was Harold James, a son and legal heir of John James and, of course, a brother of Ruth Bearberg. Harold died in August of 1971. The defendant Stones, Inc., was the tenant of both Ruth Bearberg and Julia James between 1971 and 1979, has no interest in this litigation, and will not be referred to again. Therefore, when we speak of the defendant, we are referring to Julia James.

On a motion for summary judgment, the question which must be decided is whether or not there is a genuine issue as to any material fact, and not how that issue is to be decided. *Hanzlik v. Paustian,* 211 Neb. 322, 318 N.W.2d 712 (1982).

The record made upon which the motion for summary judgment was granted consists of an abstract of title; tax receipts showing that the parties, or their predecessors in title, had been paying the real estate taxes on the property as their ownership appeared of record; a plat of a survey; the pleadings; and the deposition of Julia James.

As suggested earlier, John James had been the owner of the entire southeast quarter, the property

with which we are here concerned. He died on April 16, 1936, and by his will left his property to his various children, including Ruth Bearberg and Harold James. These children executed various deeds between and among themselves, rearranging title to the various parcels of land, so that the title to the two tracts which are the subject of this litigation became vested as described above.

According to the testimony of Mrs. James, in 1933 she and her husband Harold moved onto the farm owned by the father, John James, and farmed the entire quarter section as tenants of John. After John's death, as she testified, Harold continued to farm the quarter section, but now as owner of a portion of it and as the tenant of his sister Ruth as to the balance. This arrangement continued, apparently, until Harold's death in 1971.

It was Mrs. James' testimony that her husband farmed his sister Ruth's land on a typical sharecrop rental basis. She did not know if Ruth ever went over the crops with her husband Harold, but insisted that she never made any complaints. Mrs. James also said that the crop rows on the land that belonged to Ruth Bearberg were always planted north and south, and that on their own land, east and west. The record does not disclose whether or not that same practice had been followed when Harold James farmed the entire quarter section as a tenant of his father. However, it seems apparent that it is the line formed by this change in direction of crop rows that the defendant insists forms the boundary between her land and that of the plaintiffs. This means that the defendant is claiming 3.1 acres consisting of a strip of land ranging in width from 63 feet to 75 feet along the extreme northern edge of the plaintiffs' land as it is described of record.

The only evidence of any notice to Ruth Bearberg of a hostile claim against her property by her brother Harold was furnished by the defendant's testimony.

She stated that her sister-in-law Ruth used to come out to the farm from Chicago once a year, but in "the last few years she didn't come out." Ruth was never told that there was a problem with the property line because Harold and Julia James always thought that the now disputed strip belonged to them. However, Mrs. James did admit that Ruth was supposed to have owned 100 acres and she and her husband Harold 60 acres, and that the crops were always split on that basis. According to Mrs. James' testimony, her husband and his sister Ruth always got along very well, "she was always satisfied, never a complaint," and she always accepted whatever Harold said. As she stated, her husband would divide the crops according to the percentages by means of his computed estimates, would sell his sister Ruth's share, and send her a check for the proceeds.

The defendant's claim is based both on adverse possession and acquiescence on the part of plaintiffs' predecessor in title, Ruth Bearberg. Her first contention can be disposed of rather summarily. As stated in *Carson v. Broady*, 56 Neb. 648, 651, 77 N.W. 80, 81 (1898): "It is an ancient and well settled rule of law that a tenant cannot, while occupying the premises, deny his landlord's title." More recently, we have said that if possession of real estate is entered upon by one as a tenant under an agreement with the owner, the occupant cannot assert ownership by adverse possession until he first surrenders possession, or the tenant, by some unequivocal act, notifies the landlord that he no longer holds under the agreement made. *Jackson v. Eichenberger*, 189 Neb. 777, 205 N.W.2d 349 (1973). Defendant's claim of adverse possession is without merit.

There is no genuine issue of fact relating to Harold James' possession under a lease agreement. The question then becomes one of whether or not the running of the crop rows in different directions was an

unequivocal act on the part of Harold sufficient to constitute notice to his landlord Ruth that he was no longer holding the disputed strip under the lease agreement. The record does not disclose when this method of planting was commenced. If it was first established while Harold was a tenant of his father, that fact is completely immaterial. In order to amount to notice as to Ruth, the record must disclose that at some time after she became the owner this method of planting was commenced, and, therefore, she was made aware of an adverse claim on the part of her brother. The plaintiffs' evidence establishes undisputed record title in themselves, and therefore a prima facie showing for summary judgment has been established. The defendant has raised as an affirmative defense the claim of adverse possession. The defendant has failed to offer competent evidence that there is a genuine issue as to that fact. *Hanzlik v. Paustian,* 211 Neb. 322, 318 N.W.2d 712 (1982). Defendant's claim of adverse possession is without merit.

Regarding the defendant's claim based upon acquiescence, that doctrine involves more than a mere establishment of a line by one party, and the taking of possession by him. " 'It involves the idea that the other [landlord], with knowledge of the line so established and the possession taken, assents thereto, and this may be shown by his conduct, by his words, or even by his silence. There must, however, be something in the record to show that the party, charged with acquiescence, consented to the act of the other in establishing the line and assuming possession. Acquiescence means a *consent* to the conditions, and involves *knowledge* of the conditions. . . . Acquiescence involves the idea of notice or knowledge of conditions, and the evidence must disclose that with such notice and knowledge he *did something that indicated an assent* to such conditions and an acquiescence therein.' " (Emphasis supplied.) *Hakanson*

*v. Manders,* 158 Neb. 392, 397, 63 N.W.2d 436, 439 (1954). Undisputed evidence that Ruth Bearberg was never told that there was a problem with the property line, that she owned a full 100 acres and was paid rental on that basis, and that she always got along with her brother and always accepted whatever Harold said hardly demonstrates notice of the establishment of a boundary line prejudicial to her interests, and an acquiescence thereto.

The judgment of the District Court in granting summary judgment was correct and is affirmed.

AFFIRMED.