ROBERT MATZKE ET AL., APPELLEES, V. WALTER HACKBART ET AL., APPELLANTS.

399 N.W.2d 786

Filed January 23, 1987.    No. 85-567.

Blevens, Blevens & Jacobs, for appellants.

Larry L. Brauer of Allan, Brauer & Mullally, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

The Matzkes, the plaintiffs-appellees, brought this action in the district court for Seward County to settle a boundary dispute with their neighbors to the north, the Hackbarts, as provided under Neb. Rev. Stat. § 34-301 (Reissue 1984). The district court ordered the boundary to be established at a line consistent with the survey presented by the appellees. The Hackbarts appeal.

The first assignment of error by the appellants is that the district court erred in not establishing the boundary line at an ancient fence line and that removal of a fence does not forfeit the land previously adversely possessed. The second asserted error is that the district court erred in holding the appellants had not proved adverse possession. The third is that the district court "erred in ignoring the easement for access and right-of-way granted by the State for the benefit of the appellants." We affirm the district court's order due to a failure of the appellants to describe the extent of the land allegedly adversely possessed with sufficient particularity to enable a judgment to be entered upon description.

While negotiating a purchase of the land to the south of the Hackbarts' property in 1984, the Matzkes had a survey conducted to determine the perimeters of the land. The survey stake on the east end of the north line was placed in the middle of a driveway used by the Hackbarts to enter their southern 40 acres. Walter Hackbart considered the survey stakes to be too

far north. He pulled up the stakes and drove them in where he believed the line to be. Due to the boundary line dispute, the Matzkes negotiated a $1,500 reduction of the purchase price which was calculated by prorating the cost of the contested acreage. Robert Matzke testified that the reduction reflected his concern of an impending lawsuit and was not the result of purchasing less property than the deed described.

On January 11, 1985, the Matzkes filed a petition in the district court for Seward County requesting a judgment establishing a permanent boundary line at the survey line. The Hackbarts' answer claimed that they had adversely possessed for more than 10 years land south of the survey line and that the permanent boundary line should be established at an ancient fence line. The Hackbarts also cross-petitioned, praying that title to the contested strip of land be quieted and confirmed in them.

At the time of trial Walter Hackbart testified that he was 64 years old and had been born on the farm, which had been in his family for three generations. He farmed the property his whole life, except for a short period of time when he was in the service. For as long as he could remember, and for a period exceeding 10 years, an ancient fence marked the southern boundary of his property and the northern edge of the land then owned by William Reber, which eventually came to be owned by the Matzkes.

According to Hackbart, for years he plowed away from the fence and Reber plowed toward the fence, which created a ridge or dropoff at the fence line. Approximately 7 years before the trial the fence was taken down to clear away brush and grade out some trees, but the ridge remained, as did some trees on the east end of the fence line. At the time of trial a ridge was evident only on the eastern one-third of the disputed strip of land.

At trial the appellees, the Matzkes, presented exhibit 1, a copy of a survey prepared by Dennis Simonds, the Seward County surveyor. In their brief the appellees represent exhibit 1 to be an official record of survey and therefore entitled to be considered to be presumptive evidence of the facts stated within the survey, as authorized by Neb. Rev. Stat. § 81-8,122.01 (Cum. Supp. 1986). Section 81-8,122.01 requires that official

·records of survey be filed in the survey record repository within 90 days of the completion of the survey. Exhibit 1 does not, on its face, reflect that it was timely filed or that it was ever filed, and Simonds' testimony that he filed the survey is not competent evidence of a timely, proper filing. Therefore, we do not consider exhibit 1 to be an official record of survey or afford it the legal presumption provided for in § 81-8,122.01 as the appellees urge us to do.

However, § 34-301 does not require that an official record of survey be presented to the court. It requires that the plaintiff's petition describe the land "as accurately as may be." The testimony of Simonds and the copy of his survey sufficiently establish the factual basis for the description contained in the petition. Since the results of the survey are uncontroverted, there can be no question that the Matzkes sustained their burden of proof with respect to where the boundary line should be, absent proof that the boundary is elsewhere due to adverse possession by the Hackbarts.

The Hackbarts' first and second assignments of error essentially voice the same concern. Whether the district court erred in not establishing the boundary at the old fence line is dependent upon ·whether the court erred in finding that the appellants did not sustain the burden of proof required to establish title to the land up to a line alleged to be an ancient boundary line. The Hackbarts' position is that they met their burden of proof with respect to adverse possession by proving actual, continuous, exclusive, notorious, and adverse possession of the strip of land for the statutory period of 10 years. See *Hardt v. Eskam,* 218 Neb. 81, 352 N.W.2d 583 (1984). However, proof of the adverse nature of the possession of the land is not sufficient to quiet title in the adverse possessor; the land itself must also be described with enough particularity to enable the court to exact the extent of the land adversely possessed and to enter a judgment upon the description. *Steinfeldt v. Klusmire,* 218 Neb. 736, 359 N.W.2d 81 (1984); *Petsch v. Widger,* 214 Neb. 390, 335 N.W.2d 254 (1983); *Layher v. Dove,* 207 Neb. 736, 301 N.W.2d 90 (1981).

In *Pokorski v. McAdams,* 204 Neb. 725, 285 N.W.2d 824 (1979), this court adopted the rule as stated in 2A C.J.S.

*Adverse Possession* § 264 (1972):

> "A claimant of title by adverse possession must further show the extent of his possession, the exact property which was the subject of the claim of ownership, that his entry covered the land up to the line of his claim, and that he occupied adversely a definite area sufficiently described to found a verdict upon the description."

204 Neb. at 731, 285 N.W.2d at 827. In determining whether the appellants met this burden of proof, we review the record de novo and reach conclusions independent of the trial judge. *Steinfeldt v. Klusmire, supra; Weiss v. Meyer*, 208 Neb. 429, 303 N.W.2d 765 (1981). The appellants must prove their case by a preponderance of the evidence. *Layher v. Dove, supra; Weiss v. Meyer, supra*.

In its order establishing the boundary at the line described by plaintiffs' exhibit 1, the district court found that

> [i]t is impossible to formulate a metes and bounds description of the area claimed by the defendants from the evidence or from permanent relevant landmarks. To do so would require speculation and conjecture.
>
> Defendants have failed to sustain their burden of proof to gain title by adverse possession, and their cross-petition must be and is hereby dismissed with prejudice.

Our review of the record leads us to the same conclusion as that of the district court, that the Hackbarts failed to describe with certainty where the fence used to be.

As to the east end of what Walter Hackbart felt should be his southern boundary, he testified that the corner was at the entry point of his easement from the south and that when he removed the fence, he had left some trees at the east end. Hackbart also testified that an original fencepost still stood at the east end, although Robert Matzke testified the pole was erected after the boundary dispute started and Simonds, the surveyor, testified that he did not observe any fenceposts at the time he made his survey. A ridge approximately 8 to 12 inches high was visible on the eastern one-third of the property. No permanent landmarks of any sort marked the west end of the original fence line.

Hackbart stated that Elsie Gerkensmeyer's (neighbor to the east) ancient fence, still standing at the time of trial, was in a line

with where his fence used to be. However, the neighbor's fence cannot be used to determine the western corner by extrapolation. The record contains no descriptions whatsoever of the placement of the neighbor's fence that are in any way related to the strip of land in question. The record contains no evidence establishing where the boundary would be if one extended the line created by the neighbor's fence by some reliable and mathematically accurate means, nor is there any evidence of an attempt to do so.

Cross-examination of Hackbart about where he considered the line to be proceeded as follows:

Q. . . . [H]ow many feet south of the survey line is . . . the east end?

A. On the east end it's 13 foot.

Q. On the west end it's ten feet?

A. Ten feet.

Q. Is that exactly ten feet and exactly 13 feet?

A. No, it is not.

Q. How do you know?

A. That is my estimate. I have never measured it off. That was my estimate.

Nowhere in the record does the appellant Walter Hackbart reveal how he derived his estimation that the west end was 10 feet south of the survey line. Neither does he ever describe any part of the western two-thirds of his proposed boundary line with any more particularity than the guesses made in the excerpt above.

The last illustration of where the fence line used to be to be dealt with is testimony by Walter Hackbart that he farmed due west from the entry point of the easement. The survey line runs east and west; by the appellants' own estimation, their proposed boundary line is not parallel to the survey line. This attempt tends to contradict rather than clarify the other representations of the location of the fence line.

The boundary dispute in *Layher v. Dove*, 207 Neb. 736, 301 N.W.2d 90 (1981), was similar to the instant case in several ways. An ancient fence had been removed, leaving only a few posts on the west bank of the creek. There was a partial ridge on the old fence line resulting from leveling that was essentially

undisputed as the old boundary for the length of its distance. The survey was received into evidence, and its correctness was uncontradicted, just as in the present case. The claim of title by adverse possession was denied because the claimant's evidence, much like the evidence in this case, first of all failed to establish where the specific boundary line was, and secondly, failed to describe the land so as to enable the court to enter a verdict upon the description.

In *Petsch v. Widger*, 214 Neb. 390, 397, 335 N.W.2d 254, 259 (1983), which also involved a boundary dispute due to a removed fence, we considered the language in *Layher v. Dove, supra*, to indicate "that a description must not only be sufficient to found a verdict on but must also be *'exact' and 'definite.'* " (Emphasis supplied.) The claimants by adverse possession in *Petsch* were unable to prove the exact location of the original fence. For that reason, and others, their claim was denied.

In this case the clearest of the descriptions presented is an admitted estimation, with no factual basis expressed in the record. An exact metes and bounds description is impossible to ascertain from the record, and the appellants' failure to adequately describe their proposed boundary is fatal to their claim of adverse possession. *Steinfeldt v. Klusmire*, 218 Neb. 736, 359 N.W.2d 81 (1984). The assigned errors are without merit because the appellants have not met their burden of proof so as to entitle them to have the boundary declared to be at the place of the old fence line.

The last assignment of error to be addressed is the appellants' assertion that the district court "erred in ignoring the easement for access and right-of-way granted by the State for the benefit of appellants."

The Hackbarts' farm was divided by Interstate 80 in 1963. As a result, access from the north to the "southern 40" was cut off, and the southern parcel was landlocked. The Hackbarts owned a piece of land southeast of the southern 40 that had the vertex of its northwestern corner at the same point as the vertex of the southern 40's southeastern corner. Elsie Gerkensmeyer, who owned the land to the east of the southern 40, sold a small triangle-shaped piece of land from her southwest corner to the

State of Nebraska. The state, in turn, granted an easement to the Hackbarts allowing them ingress and egress from the southern 40.

The deed from Gerkensmeyer to the State of Nebraska and the grant of an easement from the state to the Hackbarts were both received into evidence.

The assignment of error is unclear as to what is actually being complained of, although a review of Walter Hackbart's testimony leads us to believe the appellants' complaint might be that the easement indicates the survey is wrong or that the boundary as established by the district court has the effect of denying the Hackbarts access to their southern 40 because the easement does not reach the ordered boundary. We find no error in either regard.

First of all, Walter Hackbart testified that the surveyor put a survey stake in the middle of his easement and that the land the easement is on is owned by the State of Nebraska. He testified that the easement was marked out for him by the State of Nebraska surveyors. Yet, he did not have the land resurveyed to show the appellees' survey was in error. When asked if he had a copy of the state's survey at trial, he declared he did not have it with him.

The Simonds survey indicates that the old fence was erected in the wrong place. Absent a conflicting survey or other evidence that the easement is actually in the place described by the deed to the state and the grant to Hackbarts, we must assume that the survey is correct and their easement lies elsewhere. There is no error in this regard.

With respect to the fact that the new boundary may deny the Hackbarts access to their property, their cross-petition contained a claim of adverse possession. It did not request in the alternative that the court grant the appellants a prescriptive easement due to their continuous use of the strip since 1963. The Matzkes had not denied them access as of the time of trial, and although we find that the appellants did not prove their case of adverse possession, we do not speak as to the merits of a possible claim for an easement across the appellees' land, since that is not the case that is before us. It was not error for the district court to be silent regarding the easement granted to the

appellants.

Having reviewed the record and finding no error, we affirm the district court's order establishing the boundary line at the place described in appellees' exhibit 1, the survey conducted by Simonds.

AFFIRMED.