LEROY C. KRAFT AND RITA M. KRAFT, APPELLEES, V.
ROBERT L. METTENBRINK AND MAY METTENBRINK,
HUSBAND AND WIFE, ET AL., APPELLANTS, AND
DAVID W. BOCKMANN AND KIM A. BOCKMANN,
HUSBAND AND WIFE, APPELLEES.

559 N.W.2d 503

Filed January 21, 1997. No. A-95-1235.

David A. Domina and, on brief, Robert L. Mettenbrink and May Mettenbrink for appellants.

William G. Blackburn, of Cunningham, Blackburn, Francis, Brock & Cunningham, Attorneys, for appellees Kraft.

SIEVERS, MUES, and INBODY, Judges.

MUES, Judge.

## INTRODUCTION

LeRoy C. Kraft and Rita M. Kraft own property adjacent to property owned by the Mayrob Company, of which Robert L. Mettenbrink and May Mettenbrink are trustees. The Mettenbrinks et al. (Mettenbrinks) appeal from a decision establishing the boundary line between these two properties and quieting title to disputed property in the Krafts.

## STATEMENT OF CASE

In 1954, Robert Mettenbrink became owner by warranty deed of real property legally described as the north half of Fractional Section 19, Township 12 North, Range 9 West of the 6th P.M., in Hall County, Nebraska (hereinafter referred to as Fractional Section 19). Adjacent to Fractional Section 19 to the east is the northwest quarter of Section 20. In 1989, the Krafts became owners by warranty deed of part of the northwest quarter of Section 20. The Krafts' interest, described by metes and bounds, began and ended on the west line of the northwest quarter and contained 69.332 acres, more or less. This dispute arose

over the correct location of that west boundary line which divides these two properties.

An original government survey conducted in 1866 established the location of the true corner between Fractional Section 19 and the northwest quarter of Section 20. However, a subsequent survey conducted in 1895 marked the location of this corner by placing a stake 205 feet east of the previously marked corner. This error was discovered in or about 1992 by the Hall County surveyor. That portion of land lying between the original corner and the subsequent corner consists of approximately 12.214 acres. Whether the Krafts or the Mettenbrinks own this portion of land is the subject of this litigation. Pursuant to the original government survey, this disputed property lies in the northwest quarter of Section 20; however, the corner, as it was marked in 1895, places this disputed property within Fractional Section 19.

The evidence establishes that neither the Krafts nor the Mettenbrinks have paid property taxes on this disputed area. While county records indicate the Mettenbrinks' interest as 2.38 acres, the Krafts are shown to own 69.33 acres.

On August 27, 1993, the Krafts filed a petition asking the court to decree the boundary between Fractional Section 19 and the northwest quarter of Section 20 in accordance with the original government survey. The Krafts further alleged ownership of the adjacent disputed property and sought damages in the amount of $2,500. The Krafts also sought two easements for ingress and egress across the Mettenbrinks' land to permit access to the county road lying on the west side of Fractional Section 19.

By answer and cross-petition, the Mettenbrinks claimed the correct corner was pursuant to that set by the 1895 survey. They also, by cross-petition, asserted ownership of the disputed 12.214 acres under color of title and adverse possession.

Prior to trial, the parties stipulated that the true corner of the properties was in accordance with the original government survey, or 205 feet west of the corner as it was marked in 1895. The court's order dated October 13, 1995, established the boundary line between the two properties in accordance with this true corner. The court further found that neither the Krafts nor the

Mettenbrinks had established ownership by adverse possession and thereafter quieted title to the disputed property in the Krafts. The Krafts' metes and bounds description was changed accordingly, and while their legal description continues to begin and end at a point on the west line of the northwest quarter of Section 20, they now own 80.163 acres, more or less.

The court further granted an easement to the Krafts for ingress and egress along and upon a tract of land generally described as 24 feet in width adjacent to a natural creek located near the northerly end of Fractional Section 19 as well as a 24-foot easement adjacent to and along the southerly side of a creek which traverses Fractional Section 19 near the south end of the north half of the north half of Fractional Section 19.

Finally, the court found it was without jurisdiction to award damages and denied the Mettenbrinks' cross-petition. The Mettenbrinks' motion for a new trial was subsequently overruled, and this appeal followed.

## ASSIGNMENTS OF ERROR

Summarized, the Mettenbrinks assert that the trial court erred in (1) quieting title to the disputed property in the Krafts, (2) granting the Krafts easements when there was already an existing easement to One-R School, and (3) dismissing the Mettenbrinks' cross-petition.

## STANDARD OF REVIEW

An action to settle disputed corners is an equity action, and appeals are taken in conformity with equity rules. Neb. Rev. Stat. § 34-301 (Reissue 1993). In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Gustin v. Scheele,* 250 Neb. 269, 549 N.W.2d 135 (1996); *Whitten v. Malcolm,* 249 Neb. 48, 541 N.W.2d 45 (1995).

## ANALYSIS

The Krafts brought this action pursuant to § 34-301 for the purpose of establishing the west boundary line to real property belonging to them and the east boundary line to real property belonging to the Mettenbrinks. Section 34-301 provides in relevant part:

> When one or more owners of land, the corners and boundaries of which are lost, destroyed or in dispute, desire to have the same established, they may bring an action in the district court of the county where such lost, destroyed or disputed corners or boundaries, or part thereof, are situated, against the owners of the other tracts which will be affected by the determination or establishment thereof, to have such corners or boundaries ascertained and permanently established. . . . Either the plaintiff or defendant may, by proper plea, put in issue the fact that certain alleged boundaries or corners are the true ones, or that such have been recognized and acquiesced in by the parties or their grantors for a period of ten consecutive years . . . .

Thus, while a boundary may be fixed in accordance with a survey, see *Layher v. Dove*, 207 Neb. 736, 301 N.W.2d 90 (1981), when a different boundary is shown to have existed between the parties for the 10-year statutory period, it is that boundary line which is to be determined between the parties and not that of the original survey. See *Converse v. Kenyon*, 178 Neb. 151, 132 N.W.2d 334 (1965). See, also, *Matzke v. Hackbart*, 224 Neb. 535, 399 N.W.2d 786 (1987).

In the present action, the trial court determined the true corner in accordance with the original government survey and quieted title to the disputed property in the Krafts. In their first assigned error, the Mettenbrinks argue that the trial court erred in quieting title to this property in the Krafts. The Mettenbrinks argue that they are the true owners of the disputed property by virtue of adverse possession and mutual acquiescence. The Mettenbrinks further assert that the Krafts failed to establish an ownership interest in said property. We address each argument separately.

*Adverse Possession.*

■ The party who claims title by adverse possession must prove by a preponderance of the evidence that he has been in actual, continuous, exclusive, notorious, and adverse possession under claim of ownership for 10 years. *Gustin v. Scheele*, 250 Neb. 269, 549 N.W.2d 135 (1996); *Dugan v. Jensen*, 244 Neb. 937, 510 N.W.2d 313 (1994). Intent to assert ownership is another requirement of adverse possession, although in most cases, it is inferred from the circumstances. *Petsch v. Widger*, 214 Neb. 390, 335 N.W.2d 254 (1983).

Robert Mettenbrink testified that when he purchased Fractional Section 19 in 1954, he thought he was purchasing approximately 12 acres. At the time of purchase, there was a fence on the east side of what he believed to be Fractional Section 19, which he subsequently removed. Robert's father owned the adjacent property to the east (the northwest quarter of Section 20) until 1987, when Elmer Mettenbrink purchased the property from Robert's father's estate. In 1989, Elmer sold his interest to the Krafts.

Rita Kraft testified that at the time of purchase, she inspected the property, and the disputed area had weeds and milo. In 1990, the Krafts began to farm the disputed area. According to Rita, they had to hire Joe Dibbern to come in and plow the area because the Krafts' equipment was not big enough to plow the weeds under. Dibbern testified that he could not say if a crop had been raised on the disputed property the preceding year or not.

After the Krafts' crop was planted, Robert Mettenbrink approached the Krafts, asserting his ownership of the disputed property and offering to rent it to the Krafts. This offer was refused because, according to Rita, she did not believe the Mettenbrinks owned this land, as records indicated that they owned only approximately 2 acres to the west of the northwest quarter of Section 20. The Mettenbrinks subsequently erected a fence, claiming ownership of the disputed property, and further erected a gate preventing the Krafts access to the county road located on the west side of Fractional Section 19.

■ The Mettenbrinks correctly cite the rule that an adverse possessor can succeed in his claim even if he does not know he

is occupying land not included in his deed or chain of title. See *Gustin, supra.* Stated another way, although a party does not intend to claim more land than that described by deed, even mistaken intent is sufficient where a party occupies to the wrong line believing it to be the true line. *Weiss v. Meyer,* 208 Neb. 429, 303 N.W.2d 765 (1981). Intent, however, is not the only element which needs to be established in a claim for adverse possession. The court stated in *Petsch*:

> Intent satisfies the "hostile" or "adverse" requirement of adverse possession. An equally important element to be proved before title is gained through adverse possession is that the claimant must also show notice to the true owner. The notice requirement and intent requirement are independent; it is the nature of the hostile possession that constitutes the warning, i.e., notice, not the intent of the claimant when he takes possession. [Citations omitted.] More specifically, the acts of dominion over the land must be so open, notorious, and hostile as to put an ordinarily prudent person on notice that his lands are in the adverse possession of another.

214 Neb. at 400-01, 335 N.W.2d at 260.

Certainly, the Mettenbrinks' actions toward the Krafts provided sufficient notice of adverse possession. However, since the Krafts had not been in possession of this land for 10 years prior to the filing of their action in 1993, the Mettenbrinks must have also provided sufficient notice to the Krafts' predecessors.

As previously stated, Robert Mettenbrink removed the fence purportedly dividing Fractional Section 19 and the northwest quarter of Section 20 after he purchased his property in 1954. Robert testified that from 1954 until 1990, the property owned by him and that property to the east, first owned by Robert's father and then by Elmer Mettenbrink, were farmed together.

 It is well established that possession by permission of the owner can never ripen into title by adverse possession unless change of possession has been brought home to the true owner. *Petsch, supra.* This rule applies even where an original owner who permitted a particular use devised the land to another who simply continued to permit said use. *Id.* Further, permission may be presumed under some circumstances. For

example, as to parties sharing a parental or filial relationship, possession of land of one by the other is presumed to be permissive. *Chase v. Lavelle*, 105 Neb. 796, 181 N.W. 936 (1921). This rule was extended in *Petsch, supra*, to apply to more distant relationships such as between grandson and stepgrandmother and between cousins.

Absent any evidence to the contrary, we likewise presume that the Mettenbrinks' use of the disputed property was permissive. Thus, while the Mettenbrinks may have satisfied the intent element of adverse possession, they have failed to evidence any acts of dominion over the land sufficient to put the Krafts' predecessors on notice. Further, the evidence fails to establish that the Mettenbrinks have been in exclusive possession of this property. To the contrary, Robert's testimony indicates they did not exercise exclusive possession over the property at issue. We also point out that the abstract of title to the northwest quarter of Section 20 indicates that Robert and May had an interest in the north half of Section 20 as late as 1986. Obviously, one cannot adversely possess against oneself.

Thus, the Mettenbrinks have failed to establish by a preponderance of the evidence that they are the owners of the disputed property by virtue of adverse possession. The Mettenbrinks also argue in their brief, however, that they own the property at issue by virtue of mutual recognition and acquiescence.

*Mutual Recognition and Acquiescence.*

When properly pleaded, the theory of adverse possession as well as the theory of mutual recognition and acquiescence may be raised under § 34-301. *Layher v. Dove*, 207 Neb. 736, 301 N.W.2d 90 (1981). The rule of recognition and acquiescence embodied in § 34-301 is separate and distinct from the theory of adverse possession. *Spilinek v. Spilinek*, 215 Neb. 35, 337 N.W.2d 122 (1983). The Mettenbrinks did not raise the theory of mutual recognition and acquiescence in their answer and cross-petition. For that reason, we could choose not to address it here. See *McDermott v. Boman*, 165 Neb. 429, 86 N.W.2d 62 (1957).

Even if the theory were properly pleaded, however, a claim based on this theory must fail. As with adverse posses-

sion, the statutory period required for acquiescence is 10 years. § 34-301; *Swanson v. Dalton*, 178 Neb. 55, 131 N.W.2d 704 (1964). In order to claim a boundary line by acquiescence, both parties must have knowledge of the existence of a line as the boundary. *Spilinek, supra*. Therefore, the mere establishing of a line by one party and the taking by him of possession up to that line is insufficient. *Bender v. James*, 212 Neb. 77, 321 N.W.2d 436 (1982). Thus, in *Bender*, the Supreme Court found that changing the direction of crop rows where there had never been a boundary dispute and where the parties' predecessors in title had always gotten along with each other did not constitute notice of the establishment of a boundary line sufficient to support a claim of acquiescence.

Again, there is no evidence from which we could conclude that previous landowners had knowledge or notice of the purported boundary line which the Mettenbrinks now assert. Thus, even had the theory been properly pleaded, the Mettenbrinks have failed to adduce evidence sufficient to support a claim of mutual recognition and acquiescence.

*Boundary Line and Title to Krafts.*

The parties stipulated that the true corner was that set by the original government survey and that this corner is located 205 feet west of the stake erroneously placed in 1895. Absent a showing of adverse possession or acquiescence, the boundary line was correctly established in accordance with this original government survey. See § 34-301. The Mettenbrinks, however, argue that the Krafts are not entitled to the disputed property because the Krafts did not establish title by adverse possession. This argument is not well taken. The boundary line was properly set according to the survey. The Mettenbrinks needed to prove adverse possession or acquiescence to establish a boundary different from that evidenced by the survey. However, the same cannot be said of the Krafts.

The effect of placing the boundary line in accordance with the true corner was to move the west line of the northwest quarter of Section 20 to the west 205 feet. The metes and bounds deed granting the Krafts ownership of a part of the northwest quarter of Section 20 begins and ends at the *west* boundary of

the northwest quarter of Section 20. Once the west boundary line was changed, it logically follows that the Krafts' ownership interest would likewise change. The effect of the court's order was to increase the Krafts' property interest from 69.332 acres, as originally deeded to them, to 80.163 acres. If anyone could challenge the trial court's order granting the Krafts the additional acres, it would be those property owners located to the *east* of the Krafts. In their petition, the Krafts specifically named all persons having an interest or claim in the 80.163 acres awarded to them by the court. As no such persons have objected, the trial court's quieting of title in the Krafts was correct.

*Easements.*

As previously set forth, the court further granted an easement to the Krafts for ingress and egress along and upon a tract of land generally described as 24 feet in width adjacent to a natural creek located near the northerly end of Fractional Section 19 as well as a 24-foot easement adjacent to and along the southerly side of a creek which traverses Fractional Section 19 near the south end of the north half of the north half of Fractional Section 19. In their second assigned error, the Mettenbrinks assert that this was error, as there was already an existing easement to One-R School. In support of this assigned error, the Mettenbrinks argue that the Krafts have other means for ingress and egress, that the easements are inconsistent with a purchase agreement executed in July 1989, and that One-R School already has an easement on the Mettenbrink property.

Although the record is sketchy at best regarding the location of the easements and the fencing involved, Rita Kraft testified that since the Mettenbrinks installed the fence and gate, the Krafts have been denied access to a field located at the north end of their property. The Krafts previously accessed this field from the county road on the west side of their property. Since the fence was installed, the Krafts have been forced to build a bridge across a creek in order to access their field. According to Rita, it is dangerous to cross this creek with their equipment. In support of their argument that the Krafts have other means of ingress and egress, the Mettenbrinks argue that the Krafts never

approached the county to ask it to put in a culvert. This argument is without merit. The evidence is that without the easements, the Krafts have no means of ingress and egress, other than constructing a bridge which is dangerous to cross.

■ As to the Mettenbrinks' argument pertaining to the 1989 purchase agreement, their argument is without merit, and at any rate, this agreement was not entered into evidence. We, therefore, do not consider it. A party's brief may not expand the evidentiary record. *State v. Rust*, 247 Neb. 503, 528 N.W.2d 320 (1995).

Finally, the record reflects that One-R School was granted an easement on Fractional Section 19 for use of leach lines for sewage disposal purposes. The Mettenbrinks contend that this somehow precludes an award of easements to the Krafts. The Mettenbrinks cite no authority for this proposition, nor does the evidence establish how the Krafts' and the school's easements would in any way be mutually exclusive. This assigned error is without merit.

*Cross-Petition.*

■ In their third assigned error, the Mettenbrinks assert that the trial court erred in not permitting their cross-petition. We have previously discussed that portion of their cross-petition asserting adverse possession. In their cross-petition, the Mettenbrinks also sought costs and attorney fees for the filing of a frivolous action, in accordance, we presume, with Neb. Rev. Stat. § 25-824 (Reissue 1995). The Mettenbrinks similarly seek attorney fees on appeal resulting from this "frivolous complaint." Brief for appellants at 27. "Frivolous" as used in § 25-824(2) refers to a legal position wholly without merit. *First Nat. Bank in Morrill v. Union Ins. Co.*, 246 Neb. 636, 522 N.W.2d 168 (1994). Obviously, the Krafts' claim is not such an action, and the Mettenbrinks were not entitled to an award of costs or attorney fees by the trial court pursuant to § 25-824. They are likewise not entitled to such on appeal, and this assigned error is without merit.

## CONCLUSION

The trial court properly established the boundary line in accordance with the original government survey and properly

quieted title to the disputed property in the Krafts. The trial court also properly granted easements to the Krafts and denied the Mettenbrinks' cross-petition.

AFFIRMED.