ARTHUR AND KATHY INSERRA, HUSBAND AND WIFE,
APPELLANTS, V. LOUIS AND BARBARA VIOLI,
HUSBAND AND WIFE, APPELLEES.

679 N.W.2d 230

Filed May 14, 2004.    No. S-03-469.

Daniel L. Rock and George T. Blazek, of Ellick, Jones, Buelt, Blazek & Longo, for appellants.

Charles Jan Headley for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is an action brought by Arthur and Kathy Inserra to quiet title to a platted tract of residential real estate located in Omaha, Nebraska. Abutting landowners Louis and Barbara Violi claimed title to a portion of the tract by adverse possession. The district court found in favor of the Violis, and the Inserras appeal.

## FACTS

In March 1973, the Violis moved into a newly constructed home located on Lot 55, Block O, Deer Ridge, an addition to the City of Omaha, Douglas County, Nebraska. Lot 55 is bordered on the east by Lot 56. When the Violis moved in, the residence on Lot 56 was occupied by Dave Hunt and his family.

Hunt had installed sod in his yard that ran "pole to pole from the telephone cable box in the back to the white pole in the front." He had also planted trees right along this line. Due to these actions, Barbara Violi perceived the lot line between Lots 55 and 56 to run along this "pole to pole" line. In June 1973, the Violis installed sod on Lot 55 which extended to where Hunt had laid his sod on Lot 56. After that time, the Hunts took care of the property to the east of the pole-to-pole line and the Violis took care of the property to the west of that line.

In approximately 1975, the Hunts sold Lot 56 to John and Karen Tilley. At approximately the same time, the Violis installed L-shaped sections of split-rail fence at various points on what they understood to be the boundaries of their property. These fence sections were decorative in nature and did not provide enclosure. Sections of fence along the east border of the yard were placed on the perceived pole-to-pole lot line. The Violis planted flowers in the area surrounding the fences in the ensuing years. The Tilleys built a fence that extended from the front of their home and attached to one of the fence sections erected by the Violis.

In 1978, James and Judith Palzer purchased Lot 56 from the Tilleys. In approximately 1989, the Palzers installed a sprinkler system on Lot 56 that ran along the perceived pole-to-pole border between the two lots. Several years later, the Violis installed a sprinkler system in their yard that watered up to the pole-to-pole property line. The Palzers and the Violis generally mowed to the same pole-to-pole line established by the sod installation, although at times they would mow into the other's yard.

Soon after the Inserras purchased Lot 56 from the Palzers in 2001, they became involved in a dispute with the Violis over the correct boundary between their properties. The Inserras obtained a survey that established that a section of split-rail fence segment erected by the Violis was actually on Lot 56, and not on Lot 55. They subsequently filed this action to quiet title to Lot 56 in

accordance with the survey. The Violis answered and counter-claimed, asserting that they had been in actual, continuous, exclusive, notorious, and adverse possession of a portion of Lot 56 for over 10 years. They prayed for an order declaring them to be the owners in fee "of the premises now occupied by them up to the line denoted by the fence now located between the proper-ties of the parties."

At trial, Barbara Violi identified various photographs depict-ing the split-rail fence and the poles referred to in her testimony. She testified that the line created by the split-rail fence "runs roughly back to that telephone box in the back" and "runs roughly up, points towards the utility pole" in the front. She tes-tified that this was the area the Violis were claiming by adverse possession. On redirect examination, Barbara clarified that the area being claimed by adverse possession was "on the west side . . . the area of the true lot line between Lot 55 and 56" and on "the east side it would be the area . . . created by the pole-to-pole line." Louis Violi testified that the land being claimed was from pole to pole, but admitted that he had "not put a line down or anything else." Referring to a survey the Violis had obtained, Louis Violi indicated that the eastern boundary of the disputed property could be determined by extending the split-rail fence line toward the back of the lot. He further testified that the por-tion of Lot 56 which he was claiming by adverse possession was "from the telephone to the light pole."

In an order filed on April 2, 2003, the district court found that the Violis

> had actual and exclusive possession of the property located on Lot 56 from the center of each of the poles adjacent to Lot 55 and said possession exceeded a period of ten years. Their possession was notorious in that their physical actions in installing the sprinkler system, split rail fence and plantings were visible and conspicuous and, further-more, their possession was hostile in that it was against all other claimants of the land.

The court thus dismissed the Inserras' petition and granted the Violis ownership "of the real property running from 'pole to pole' on center on Lot 56 immediately adjacent to Lot 55." The Inserras filed this timely appeal.

## ASSIGNMENTS OF ERROR

The Inserras assign, restated, that the district court erred in (1) granting ownership of the disputed property to the Violis without an exact and definite legal metes and bounds description of the land and (2) finding that the Violis had met their burden of proving the extent of the property and actual, exclusive, open, notorious, and hostile possession thereof.

## STANDARD OF REVIEW

A quiet title action sounds in equity. *Olsen v. Olsen,* 265 Neb. 299, 657 N.W.2d 1 (2003); *Burk v. Demaray,* 264 Neb. 257, 646 N.W.2d 635 (2002). In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, an appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *K N Energy v. Cities of Alliance & Oshkosh,* 266 Neb. 882, 670 N.W.2d 319 (2003).

## ANALYSIS

The Inserras' principal argument on appeal is that the record does not include a description of the property claimed by the Violis sufficient to establish their claim to title by adverse possession. A party claiming title through adverse possession must prove by a preponderance of the evidence that the adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under a claim of ownership for the statutory period of 10 years. *Wanha v. Long,* 255 Neb. 849, 587 N.W.2d 531 (1998). We have noted, however, that proof of the adverse nature of the possession of the land is not sufficient to quiet title in the adverse possessor; the land itself must also be described with enough particularity to enable the court to exact the extent of the land adversely possessed and to enter a judgment upon the description. *Matzke v. Hackbart,* 224 Neb. 535, 399 N.W.2d 786 (1987). Thus,

" '[a] claimant of title by adverse possession must further show the extent of his possession, the exact property which was the subject of the claim of ownership, that his

entry covered the land up to the line of his claim, and that he occupied adversely a definite area sufficiently described to found a verdict upon the description.' "

*Id.* at 539, 399 N.W.2d at 790, quoting *Pokorski v. McAdams*, 204 Neb. 725, 285 N.W.2d 824 (1979). Accord 2 C.J.S. *Adverse Possession* § 261 (2003). See *Layher v. Dove*, 207 Neb. 736, 301 N.W.2d 90 (1981). This burden is not met where the metes and bounds of the area claimed would rest on speculation and conjecture. *Steinfeldt v. Klusmire*, 218 Neb. 736, 359 N.W.2d 81 (1984).

The western boundary of the portion of Lot 56 claimed by the Violis is the platted lot line between Lots 55 and 56. The location of the eastern boundary of the claimed tract, however, is problematic. This claimed boundary is repeatedly described in the record as extending from "pole to pole." The pole which the Violis claim as the northern terminus of this boundary is, according to their testimony, a "telephone box" located near the rear of the platted lots. The other pole located at the southern edge of the property is variously described in the testimony as a "light pole," a "white pole," and a "utility pole." Although these structures are separately shown in photographs included in the record, neither is depicted on any of the surveys which are included in the evidence. One of the surveys does depict a section of split-rail fence, approximately 8 feet in length, located "APPROX. 5' EAST" of the platted lot line. As shown on the survey, the section of fence is located at approximately one-third of the 137-foot distance between the front and rear of the property. The Violis testified that this section of fence is situated on the eastern boundary of the parcel they claim by adverse possession and that the full boundary can be determined by extending a line through the fence section to the front and rear of the property. Louis Violi described the parcel thus formed as a "pie-shaped piece" which is 6 to 8 feet wide at the front of the property.

The record does not include an exact legal description of the disputed tract or a survey depicting its boundaries. The Violis argue that no such description was required because they sufficiently described the parcel which they claim by reference to landmarks. This court rejected a similar argument in *Petsch v. Widger*, 214 Neb. 390, 397, 335 N.W.2d 254, 259 (1983), reasoning that the description of property claimed by adverse possession

"must not only be sufficient to found a verdict on but must also be 'exact' and 'definite.' " Citing *Layher v. Dove, supra*. The Violis argue that in *Wanha v. Long*, 255 Neb. 849, 587 N.W.2d 531 (1998), we affirmed a judgment awarding title by adverse possession to platted residential property which, in our opinion, we described by reference to various landmarks. While that is true, the sufficiency of the description of the disputed property was not an assigned error in that case. Thus, our use of landmarks to describe the area in dispute cannot be deemed to imply either that such a description is legally sufficient or that the record before us in *Wahna* lacked a legally sufficient description.

Based upon our de novo review, we conclude that the Violis did not meet their burden of proving an exact and definite description of that portion of Lot 56 to which they claim title by adverse possession. Their testimony relating the eastern boundary of the disputed tract to existing structural landmarks provides at best an approximate location of the claimed boundary in relation to the known lot line. No specific boundary was proved because, as in *Steinfeldt v. Klusmire*, 218 Neb. 736, 739, 359 N.W.2d 81, 83 (1984), "[a]ny attempt to describe the area claimed in terms of metes and bounds would rest on speculation and conjecture." The issue is not, as the Violis argue, whether a surveyor could at some future date establish a boundary and legal description using the landmarks identified in their testimony. Rather, their adverse possession claim must fail because they did not produce such evidence at trial, as our case law requires. Thus, the record conclusively establishes that the Inserras hold title to Lot 56 in its entirety and are entitled to the relief sought in their petition.

## CONCLUSION

Based upon the foregoing, we reverse and vacate the judgment of the district court and remand the cause with directions to enter judgment in favor of the Inserras for the relief sought in their petition.

REVERSED AND VACATED, AND CAUSE
REMANDED WITH DIRECTIONS.