FRANK HARRIS ET AL., APPELLEES, V. W. C. HEETER, APPELLANT.

291 N. W. 721

FILED APRIL 19, 1940. No. 30772.

*Waldron & Newkirk,* for appellant.

*Thomas F. Hamer, George C. Holdrege* and *William J. Schall, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PAINE, J.

This is an equitable action brought by Frank Harris and Edward Harris, plaintiffs, to quiet title in them to three lots in the suburbs of Omaha. The defendant filed a cross-action, in which he sought to have the title quieted in himself as against plaintiffs. The trial court entered a decree quieting title in the plaintiffs, and defendant appeals.

The evidence discloses that these three lots are located in the bottoms in the northeast part of Omaha. The plaintiffs are truck farmers, and have lived in the neighborhood of this land for 35 years. In 1922 they purchased about 100 acres of bottom farm land lying along the Missouri river, built their home there, and have continued farming since that time. Their farm consists, in part, of blocks 18, 19, 20, 21, 22, 27, 28 and 29 in Bogg's addition to the city of Omaha. The lots involved in this suit are lots 20, 21 and 22, in block 29 in Bogg's addition to the city of Omaha. They fenced in and farmed all the ground around these lots, and farmed them too, every year from 1922 up to the present time.

The three lots are not alone inclosed by fences, but there are fences around a large field, with the nearest fence along the bank of the river, about a block and a half from these lots. No buildings of any kind have ever been erected on these three lots, so no one has ever resided on them. The plaintiffs live in a house located about one-half mile to the east of the lots in question, and prior to this suit there was nothing appearing in the record title of these lots showing any claim of title by the plaintiffs, as their sole claim of title is based upon adverse possession since 1922.

On May 13, 1929, the county of Douglas began a tax foreclosure suit under the provisions of section 77-2039 et seq., Comp. St. 1929, for the foreclosure of the statutory lien for delinquent taxes for the years 1910 and prior thereto, and for all subsequent years up to and including 1927. It is understood, of course, that Douglas county included a large number of other tracts of land in addition to these three lots. In this tax lien foreclosure suit, the last record owners of these lots were made defendants. One of them, Emma C. Peterson, the last record owner of lots 21 and 22, was served personally with summons in Douglas county. Lewis J. Spitzbart, the last record owner of lot 20, was not personally served. The lots, by proper description, were made defendants, and notice was published against all persons

having or claiming any interest in any of the real estate described in the petition. The application for service by publication was made July 31, 1929, followed by order for publication, and a proof thereof. On January 20, 1930, a decree of foreclosure was entered, and on an order of sale the sheriff sold the three lots to W. C. Heeter, the defendant in the case at bar. This sheriff's sale was held May 13, 1930, the sheriff's return showing that lot 20 was bid in by W. C. Heeter for $5, and lots 21 and 22 were bid in by him for $3, and the sale was confirmed May 17, 1932. The sheriff's deed to W. C. Heeter, defendant, was dated June 13, 1932. It thus appears that the tax foreclosure proceedings were regular and complete in every particular, except as to these adverse claimants.

The plaintiffs had been in open and notorious adverse possession of the property since the year 1922, and had continuously farmed these lots with the rest of their property. They had planted sweet potatoes, sweet corn, Irish potatoes, or other crops each year on these lots, with the surrounding ground, beginning with the year 1922, and from the fact that they planted sweet potatoes in 1922 they fixed the date of their possession as beginning on April 7, 1922, and on the day of trial, April 7, 1939, Frank Harris testified that nobody had ever notified them about the lots, or tried to collect rents or anything else, although they had been in possession then for 17 years that day. It further appears that the Harris brothers had been in possession of the property for ten years and two months when the defendant, Heeter, secured his sheriff's deed on June 13, 1932.

Judge Dineen, of the district court, found generally for the Harris brothers, plaintiffs, for the reason that service in the tax foreclosure action was not had upon the Harris brothers, either by name, or by publication, or personally, and that the proceedings, so far as they were concerned, were null and void, and by reason of the open, notorious and adverse possession of the plaintiffs for more than ten years last past the title was quieted in them, and he canceled the sheriff's deed of record as against these lots.

In support of the decree entered for the plaintiffs, quieting the title in them, it is claimed that one who is in possession of real estate, and acquiring title thereto by adverse possession, is claiming title thereto within the meaning of the tax foreclosure statute, section 77-2043, Comp. St. 1929. Plaintiffs further claim that a judgment rendered on service by publication against a resident of this state on whom personal service might have been had is absolutely void. *Hassett v. Durbin*, 132 Neb. 315, 271 N. W. 867.

"A judgment foreclosing a tax lien against unknown owners of land rendered upon a citation served by publication is not binding upon persons in actual possession of the land at the time of the filing of the suit and the rendition of the judgment, but not served with citation." *Sellers v. Simpson* (1909) 115 S. W. 888 (53 Tex. Civ. App. 205). In this case the court entered a judgment affirming the lower court, and awarding title to defendants, who claimed by adverse possession against the plaintiff, who claimed under a sheriff's deed resulting from the foreclosure of a tax lien by the state. At the time of the filing of said suit, and the rendition of said judgment for taxes, all of the defendants who pleaded the statute of limitations were in actual visual possession of the parts of the land claimed by them in their several answers, and none of them were made parties to the suit.

Where claimants have continued in adverse possession of Nebraska land for over ten years, the fact that during their occupancy there was a sale and conveyance of the premises for taxes, without notice to them, does not constitute an interruption of their possession. See *Harrison v. Dolan,* (1899) 172 Mass. 395, 52 N. E. 513, in which case Justice Oliver Wendell Holmes, who was then sitting as a judge of the supreme court of Massachusetts, and wrote the opinion, said: "Adverse possession is pure matter of fact, to be interrupted only by interrupting the possessor's exclusion of adverse claimants, an abandonment of his claim, or a' change in his intent."

It appears to the court that the situation in the case at

bar is adequately discussed by the text-writer, Freeman, in the following quotation: "A judgment pronounced without service of process, actual or constructive, and without the defendant's knowing that a court has been asked to adjudicate upon his rights, is regarded with such disfavor at law that a variety of motions, writs and proceedings are there provided to overthrow it; and in many courts it is at all times and upon all occasions liable to be entirely disregarded upon having its jurisdictional infirmity exposed. But proceedings in equity are peculiarly appropriate for the exposure of this infirmity. They permit of the formation of issues upon the question of service of process, and of the trial of those issues, after full opportunity has been given to those who seek to sustain as well as to those who seek to avoid the judgment. If at such trial it satisfactorily appears that the defendant was not summoned, and had no notice of the suit, a sufficient excuse is shown for his neglect to defend, and equity will not allow the judgment, if unjust, to be used against him, no matter what jurisdictional recitals it contains." 3 Freeman, Judgments (5th ed.) 2553, sec. 1228.

A careful examination of the record discloses no prejudicial error, and the decree of the lower court is hereby

AFFIRMED.