LYLE C. WINKLE, APPELLEE, v. JAMES MITERA ET AL., APPELLANTS, IMPLEADED WITH EDWARD V. KUDRON ET AL., APPELLEES.

241 N. W. 2d 329

Filed April 21, 1976. No. 40275.

R. Steven Geshell of Roback & Geshell, for appellants.

Lyle C. Winkle and Winkle, Allphin & Brock, for appellee Winkle.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

This is an action to quiet title to part of an island in the Platte River, located near the City of Columbus, Nebraska. The District Court quieted title in favor of the plaintiff, Winkle, and the defendants Mitera appeal. We affirm the judgment of the District Court.

Due to the complexity of the facts of this case, an unscaled sketch is provided to aid the reader of this opinion. The sketch is for illustrative purposes only, and does not purport to be accurate. The map shows the present location of the Platte River in relation to the areas which are of concern in this case. Lot 1 is the area which is enclosed in the broken lines and is partially covered by the Platte River. The disputed land in this case is darkened in with lines, and includes part of Lot 1. It should be noted that in the past 100 years, the

Platte River has moved considerably to the north. At some time prior to 1900, the north bank of the Platte River was south of Lot 1. By 1914, the Platte River had completely submerged all of Lot 1. As can be seen on the map, at present the Platte River has moved even farther north so that much of Lot 1 is once again above water.

In about 1914, Walt Giger and some of his friends started using an island in the Platte River for hunting purposes, and they constructed a cabin on the island. This island became known and is still known as Giger's Island, and is labeled as such on the map. Although the testimony is conflicting, the weight of the evidence indicates that by 1914, there were no islands between Giger's Island and the north bank of the Platte River.

At some point in time, probably around 1930, land began to appear between Giger's Island and the north bank of the Platte River.

In 1932, Platte County foreclosed a tax lien against Lot 1. The defendants bought Lot 1 for $2, and in 1935, they received a sheriff's deed to Lot 1. At the time of the tax foreclosure proceedings, Walt Giger was in pos-

session of Giger's Island, and he was not served with notice in the foreclosure action.

In 1958, Giger conveyed Giger's Island to the Hanners, who conveyed the island to the plaintiff, Winkle, in 1970. The plaintiff brought this action to quiet title to Lot 1 and the land which has accreted to it. The District Court quieted title in favor of the plaintiff, finding that the plaintiff is the owner of Giger's Island and therefore owned all the land north of Giger's Island to the middle of the channel of the Platte River. The District Court also held that the sheriff's deed which was received by the defendants was void because the plaintiff's remote grantor, Walt Giger, was not given notice of the tax foreclosure action.

The defendants Mitera appeal to this court, asking that title to the disputed land be quieted in them.

Since this is an action in equity, this court must try the issues de novo. See § 25-1925, R. R. S. 1943. However, we have stated that in equity cases where " ' "* * * the trial court has made a personal examination of the physical facts, and where, in the same case, the oral evidence in respect of material issues is so conflicting that it cannot be reconciled, this court will consider the fact that such examination was made and that such court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite." ' " Thomas v. Flynn, 169 Neb. 458, 100 N. W. 2d 37. In this case, in which there is much conflicting evidence, we have kept in mind the fact that the District Court personally viewed the disputed area and its surroundings, and observed the testimony of the witnesses.

The evidence shows that Walt Giger, the plaintiff's predecessor in title, first took possession of Giger's Island in about 1914. Giger used the island and cabin extensively. It is clear that by 1924 or 1925, Giger had been in actual, continuous, notorious, and adverse possession of Giger's Island for at least 10 years. Under section

25-202, R. R. S. 1943, Giger became the owner of Giger's Island after the 10-year period. See, Beebe v. Reichert, 172 Neb. 172, 108 N. W. 2d 804; Jones v. Schmidt, 170 Neb. 351, 102 N. W. 2d 640.

It is uncertain precisely when land began reappearing north of Giger's Island. There probably was an island or two north of Giger's Island by 1930 or 1931. The first question is: Who initially had title to the land when it started reappearing as small islands? Did the prior owner, a man by the name of John Wilcynski, still have title? In Worm v. Crowell, 165 Neb. 713, 87 N. W. 2d 384, this court stated: " 'It is the settled law of Nebraska that erosion of a river, which cuts entirely across riparian land and into the land of an adjoining owner, operates to obliterate the title of him whose land was originally riparian, and that he may not reassert his title if the river thereafter reverses its transverse wanderings and new land is formed within what were his original boundaries.' " Thus, the previous owner of the land, Wilcynski, lost his title when the Platte River completely submerged his land. When the land reappeared, Wilcynski had no claim to it.

Who then had title? In this state, the owner of an island has title to any land between his island and the center of each surrounding channel. In Heider v. Kautz, 165 Neb. 649, 87 N. W. 2d 226, where the court found that the owner of an island was entitled to accretion land, the court said that the ownership of an island " '* * * carries with it the bed of the river to the center or thread of each surrounding channel.' * * * 'Where title to an island, bounded by the waters of a nonnavigable stream is in one owner, and title to the land on the other shores opposite the island is in other owners, the same riparian rights appertain to the island as to the mainland.' " See, also, 78 Am. Jur. 2d, Waters, § 437, p. 883. Giger, as owner of Giger's Island, owned all land from his island north to the center of the channel of the Platte River. When the land reappeared, it

formed one or more islands south of the channel of the Platte River. Thus, as the islands rose up between his island and the middle of the channel of the Platte River, those islands became the property of Giger.

By the process of accretion or reliction, those small islands which appeared in about 1930, slowly grew into a sizable land mass, part of which is the subject of this dispute. Since Giger was the owner of these islands when they reappeared, he and his grantees are entitled to all land which has been added to these islands by accretion or reliction, unless the defendants can claim title under some alternative theory of law.

The defendants base their argument that they are the owners of the disputed land on two assertions. First, the defendants contend that a sheriff's deed to Lot 1, given to the defendants in 1935, conveyed the title to them. Second, the defendants argue that they have adversely possessed Lot 1 for the statutory period of 10 years, and are therefore the lawful owners of the property. Both of the defendants' contentions are without merit.

In 1935, the defendants received a sheriff's deed to Lot 1, pursuant to a tax foreclosure action. Notice of the tax foreclosure action was given to Wilcynski, who at that time was the record title holder of Lot 1, but no notice was given to Giger. In Harris v. Heeter, 137 Neb. 905, 291 N. W. 721, the court stated: "A decree of foreclosure of a tax lien * * * is of no effect as against the persons who were at the time in actual possession of * * * and who were not made parties defendant in the action and had no notice or knowledge thereof." As discussed above, Giger was the owner of Giger's Island and all the land north of his island to the center of the channel of the Platte River. Giger was in actual possession of his land, and was therefore entitled to notice of the tax foreclosure action. Since Giger was not given notice of the tax foreclosure action, the District Court never obtained personal jurisdiction over Giger in the

1932 foreclosure action, and therefore the tax foreclosure action was void as to Giger. Thus, in 1935, Giger was still the owner of the small islands lying north of Giger's Island and south of the center of the Platte River channel. Giger, and his grantees, owned this land mass which grew from these islands unless the defendants can prove title by adverse possession.

The general rule in this state is that in order to claim title by adverse possession one must have been in open, notorious, exclusive, and adverse possession of the property for a period of 10 years. See, Conkey v. Knudsen, 135 Neb. 890, 284 N. W. 737; Lunzmann v. Yost, 182 Neb. 101, 153 N. W. 2d 294. It is clear that the defendants have adversely possessed the disputed land since 1963 when a fence was erected. However, this action was commenced in 1971, so adverse possession since 1963 would not suffice to give the defendants title. The defendants contend that they have adversely possessed the disputed property since 1935. There is conflicting evidence as to whether the defendants' possession was open and exclusive from 1935 to 1963. The weight of the evidence indicates that the defendants, while claiming the disputed property since 1935, did not claim it openly or exclusively. There was evidence that the defendants, prior to 1963, never informed Giger, or his grantees, that the defendants claimed the land. There was evidence that the defendants never posted or fenced in the disputed property until 1963. In addition, in prior court proceedings, one of the defendants stated that not only did some 500 hunters use his island, but that the defendant himself used the island only for recreational purposes until 1963. We believe that it is clear the defendants did not openly and hostilely possess the disputed land until 1963. Therefore, since prior to this proceeding, they had adversely possessed the land for only 8 years, the defendants cannot claim title to the disputed land by adverse possession.

Lastly, the defendants contend that the District Court

erred in receiving certain exhibits in evidence. This assignment of error will only be considered with reference to exhibits 5 and 7. Objections to other exhibits asserted in this appeal will not be considered because they were not raised in the defendants' motion for a new trial in the District Court. In an equity case appealed to this court, review of alleged erroneous rulings of the trial court as to the reception of the evidence must be contained in a motion for a new trial and ruled on by the trial court before it can be considered on appeal. Timmerman v. Timmerman, 163 Neb. 704, 81 N. W. 2d 135. Exhibits 5 and 7 are maps of the area prepared at various times in the past by the Burlington Railroad. These maps and exhibits show the existence or nonexistence of islands in the Platte River, the existence of which and the location of which are pertinent to the issues that have been discussed in this case. The defendants assert that these exhibits were prepared for the purpose of showing the railroad bridge with respect to the banks of the Platte River, and not to show the existence of any islands in the river. They do not assert or claim that these exhibits are not accurate portrayals of what they represent. No authority is cited, nor can we find any reason to accept the proposition that a map or exhibit must be prepared for the specific purpose of examining the issues in any particular litigation. That they were relevant is not denied. Moreover, the District Court received these exhibits subject to the limitation that the reproduction of the islands on the maps might not be entirely accurate. It is further clear from the record that the District Court did not rely on the representation of the islands on the maps in reaching its decision in the case. It is clear that exhibits 5 and 7 were relevant and show the location of the banks of the Platte River in different years and the location of the channel at different times. All this was pertinent to both an understanding of the extremely complex history and background of this case and to the issues therein.

We observe that even if exhibits 5 and 7 should not have been admitted into evidence, it must be presumed that the District Court, in an equity case, disregarded inadmissible evidence in reaching its conclusion. The defendants' contention is without merit.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.