17 Neb. App. 149
Charles L. Curtis and Sandra S. Curtis, husband and wife, Appellees,
v.
Megan Giff (Marital Status Unknown), defendant and third-party plaintiff, appellant, and
Chase Home Finance, LLC, Third-Party Defendant, Appellee.
No. A-07-870.
Court of Appeals of Nebraska.
Filed October 28, 2008.
Aimee J. Haley, of Fullenkamp, Doyle & Jobeun, for appellant.
Douglas S. Lash, of Brown & Brown, P.C., L.L.O., for appellees Charles L. Curtis and Sandra S. Curtis.
Tyler P. McLeod, of Abrahams, Kaslow & Cashman, L.L.P., and Timothy M. Kelley, of Leonard, Street & Deinard, P.A., for appellee Chase Home Finance.
IRWIN, SIEVERS, and CARLSON, Judges.
SIEVERS, Judge.
Charles L. Curtis and Sandra S. Curtis brought an action in the district court for Douglas County, Nebraska, to quiet title to their backyard, which, unbeknownst to them, was in Nebraska rather than Iowa, where their house was located. The district court sustained their motion for summary judgment and quieted title in them. Megan Giff, who claimed to own the disputed property pursuant to a sheriff's deed after the property was sold in tax foreclosure proceedings in 2002, appeals.

FACTUAL AND PROCEDURAL BACKGROUND
The Curtises purchased property located on Sand Point Drive in Carter Lake, Iowa, on November 21, 1994, from Chase Home Finance, LLC (Chase), which acquired the property from the prior owner of the property, Troy & Nichols, Inc. The property is actually made up of land in Pottawattamie County, Iowa, which contains the house and front yard, and Douglas County, Nebraska, which contains the backyard and lakefront. The Curtises received a deed to the Iowa parcel from Chase on December 5, 1994, but did not receive a deed to the Nebraska parcel at that time. The Curtises are the legal owners of the Iowa parcel, and that parcel is not in dispute. The Nebraska parcel is in dispute and has the following legal description:
The East Eighty Feet (80') of the West Two Hundred Thirty-Five Feet (235') of the South Two Hundred Feet (200') of Tax Lot 16 in the Northwest Quarter (NW ¼) of the Southwest Quarter (SW ¼) of the Northwest Quarter (NW ¼) of Section 1, Township 15, Range 13 East of the 6th P.M., in the city of Omaha, Douglas County, Nebraska.
The Nebraska parcel lies directly north of the Iowa parcel and borders Carter Lake. The house and garage are located on the Iowa parcel, and a portion of the backyard, a boathouse, and a seawall are on the Nebraska parcel. There is a chain link fence on the north, east, and west sides of the backyard. This fence is on both the Iowa and Nebraska parcels. From 1994 until the present, the Curtises have maintained both the Iowa and Nebraska parcels and made repairs to the improvements on each.
At the time the Curtises purchased the Sand Point Drive property, it was under an Iowa listing agreement between Chase and Steve Amos, a real estate broker in Omaha. The listing agreement between Chase and Amos, the uniform purchase agreement signed by the Curtises, and all other forms associated with the Curtises' purchase of the property describe the property by the street address only. None of these forms include a legal description. Amos and the Curtises were unaware that the Nebraska-Iowa state line bisected the property at the time of the Curtises' purchase or that any part of the property was located in Nebraska. In fact, the property was described as "lakefront" property in Carter Lake, Iowa, in the uniform purchase agreement and on other forms associated with the Curtises' purchase. Property taxes paid by the Curtises to Pottawattamie County included the improvements on the Iowa parcel and the boathouse. The Curtises did not pay any property taxes on the Nebraska parcel to Douglas County before 2005.
The property on Sand Point Drive was conveyed to Troy & Nichols, now Chase, from the Secretary of Veterans Affairs in 1993. At that time, Troy & Nichols received two quitclaim deeds, one for each parcel. The Secretary of Veterans Affairs foreclosed on the property in 1992 and had received a special warranty deed for each parcel. Likewise, prior owners of the property received two deeds when they purchased the property in 1977 and 1986, respectively. The Curtises, however, received a deed to only the Iowa parcel upon their purchase in 1994.
An attorney involved in the transfer from the Secretary of Veterans Affairs to Troy & Nichols stated in her affidavit that the property, even though there were two deeds, was generally conveyed as one parcel. She also stated that it is prudent to consider the two parcels together because the Nebraska parcel can be accessed only through the Iowa parcel or from Carter Lake.
Sometime in 1999 or 2000, Sandra learned from a neighbor that part of the property may be in Nebraska, because a former owner had paid some Nebraska property taxes. Sandra contacted the Douglas County register of deeds and the assessor, but was unable to obtain any information. Sandra stated in her affidavit that she and Charles were never visited by Douglas County assessors, but were visited by Pottawattamie County assessors at least three times during the years they owned the property.
Apparently no one had been paying the property taxes on the Nebraska parcel between 1993 and 1998, because in November 2001, Douglas County instituted proceedings for a tax foreclosure sale. Notice of the tax foreclosure was mailed in December 2001 to Troy & Nichols, which was listed as the owner of record at that time. In addition, notice of the tax foreclosure sale was published in an Omaha legal newspaper for 3 consecutive weeks in December 2001 and again in February and March 2002. The notice was published a total of seven times.
The tax sale occurred on March 20, 2002, and Giff's father purchased the Nebraska parcel for $335.64 as an investment property for Giff, who was under the age of majority at the time of the sale. Notice of a hearing to confirm the sale was sent to Troy & Nichols. The sale was confirmed by the district court for Douglas County on May 13, 2004. Subsequently, a sheriff's deed was issued for the parcel on June 17, and Giff recorded the sheriff's deed on June 28. Giff's father paid the property taxes due on the Nebraska parcel from 1999 to 2004 on Giff's behalf.
On January 31, 2005, Giff's father sent a letter to the owner of a commercial marina next to the Curtises, asking him whether he was interested in purchasing the Nebraska parcel. The owner of the marina showed the letter to Sandra, who then called Giff's father. Through subsequent telephone calls between Sandra and Giff's father, Giff's father offered to sell the Nebraska parcel to Sandra for $20,000, an offer Sandra refused. Sandra then contacted Amos, the real estate broker for the original sale to the Curtises, and Amos then contacted Chase. Many e-mails and faxes were sent between Amos, Chase, and the Curtises' attorney. The Curtises' attorney and Amos provided documentation to Chase, alleging that the Curtises needed a deed to the Nebraska parcel because that deed was inadvertently left out in the 1994 sale. The Curtises' attorney and Amos represented that a deed would address some problems the Curtises were having in regard to a holder of tax title. Pursuant to their request, Chase issued a quitclaim deed conveying the Nebraska parcel to the Curtises on November 18, 2005. This deed was recorded on November 21. Also on November 21, the Curtises filed a real estate transfer statement to change the address to which Douglas County property tax statements were sent. From 2005, the Curtises have paid the property taxes on the Nebraska parcel.
On January 24, 2006, the Curtises filed suit against Giff to quiet title to the Nebraska parcel. The Curtises allege that they had adversely possessed the Nebraska parcel; that the tax foreclosure sale and subsequent sheriff's deed are not binding upon them, because they were not served with notice of the tax foreclosure action; and that they intended to purchase the Nebraska parcel along with the Iowa parcel in 1994. Giff counterclaimed to quiet title against the Curtises, to eject the Curtises from the Nebraska parcel, and for slander of title. Giff also filed suit against Chase to quiet title and for slander of title. Each party filed a motion for summary judgment. Finding no genuine issues of material fact, the district court for Douglas County sustained the summary judgment motions of the Curtises and Chase and denied that of Giff. The court further found that the tax foreclosure sale was void ab initio because the Curtises did not receive notice of the sale and were entitled to such notice because they were in possession of the property; that Giff had no property interest in the Nebraska parcel because the sheriff's deed was void ab initio and that therefore she could not maintain quiet title, ejectment, or slander of title claims; and that because Giff has no property interest, Chase is entitled to judgment as a matter of law. The Curtises then made a motion for default judgment quieting their title in the Nebraska parcel, which motion was granted by the district court. Giff timely appeals this ruling.

ASSIGNMENTS OF ERROR
Giff's assignments of error, consolidated and renumbered, are as follows: (1) The district court erred in finding that the Curtises were entitled to judgment as a matter of law because they did not receive actual notice of the tax foreclosure sale and were entitled to such notice because of their possession of the Nebraska parcel, making the tax foreclosure sale and sheriff's deed void ab initio; (2) the district court erred in finding that Chase was entitled to judgment as a matter of law; (3) the district court erred in failing to find that Giff was entitled to a judgment as a matter of law; and (4) the district court erred in failing to find the Curtises' claims were barred by equitable defenses.

STANDARD OF REVIEW
An action to quiet title is one in equity. See Rush Creek Land & Live Stock Co. v. Chain, 255 Neb. 347, 586 N.W.2d 284 (1998). In appeals of equitable actions, the appellate court tries factual questions de novo on the record to reach a conclusion independent of the trial court. See id.
Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. Hogan v. Garden County, 264 Neb. 115, 646 N.W.2d 257 (2002).

ANALYSIS
A decree of foreclosure of a tax lien is of no effect as against the persons who were at the time in actual possession of the land and who were not made parties defendant in the action and had no notice or knowledge thereof. See Harris v. Heeter, 137 Neb. 905, 291 N.W. 721 (1940). See, also, Winkle v. Mitera, 195 Neb. 821, 241 N.W.2d 329 (1976); Durfee v. Keiffer, 168 Neb. 272, 95 N.W.2d 618 (1959). "[A] collateral attack upon an order confirming a sale by way of a quiet title action is allowed where, due to improper service and lack of actual notice, a court fails to obtain personal jurisdiction over the party in possession of or owning the property being sold." Pilot Investment Group v. Hofarth, 250 Neb. 475, 482-83, 550 N.W.2d 27, 33 (1996) (emphasis omitted). Absent service on a party in possession, the trial court obtains no jurisdiction over the person and the order is totally void and may be subject to collateral attack. Brown v. Glebe, 213 Neb. 318, 328 N.W.2d 786 (1983). See Sileven v. Tesch, 212 Neb. 880, 326 N.W.2d 850 (1982).
Giff argues that under Nebraska law, one must have title to the disputed property to challenge a tax foreclosure sale, and that because the Curtises did not have title via a deed or adverse possession at the time of the tax foreclosure in 2002, the Curtises cannot challenge the tax foreclosure sale whereby Giff purchased the Nebraska parcel. This is an incorrect statement of the law. Giff is correct in her assertion that the Curtises were not the record owners of the property in 2002, because they clearly had not received a deed for the Nebraska parcel. Similarly, Giff is correct in claiming the Curtises had not acquired title through adverse possession in 2002. At that time, the Curtises had been on the property for only slightly more than 7 years, not 10 years as required. See, Neb. Rev. Stat. § 25-202 (Reissue 1995); Wanha v. Long, 255 Neb. 849, 587 N.W.2d 531 (1998) (stating that party claiming title through adverse possession must prove by preponderance of evidence that adverse possessor has been in (1) actual, (2) continuous, (3) exclusive, (4) notorious, and (5) adverse possession under claim of ownership for statutory period of 10 years). The Curtises also cannot tack their predecessors in interest's time of possession to their own, because Troy & Nichols did not possess the property at any point. The property had been vacant for 2 years prior to the Curtises' purchase. See Bryan v. Reifschneider, 181 Neb. 787, 150 N.W.2d 900 (1967) (stating that tacking for purposes of adverse possession requires privity of possession).
Nonetheless, the Curtises were still entitled to notice of the tax sale, because possession is sufficient to be entitled to notice of tax foreclosure proceedings. In Harris, supra, title based on adverse possession had not yet ripened when foreclosure proceedings were instituted. The Nebraska Supreme Court focused solely on actual possession, not title, at the time of the tax sale and held that possession was sufficient to be entitled to notice. Giff also argues that Harris, supra, and Durfee, supra, are inconsistent in their requirements. We disagree. Both cases apply the same rule, but, because of varying facts, come to different results on the issue of actual possession. The key inquiry is whether the Curtises were in possession in 2002 when the tax foreclosure sale took place, thereby entitling them to actual notice of the proceedings. Therefore, we turn now to whether the Curtises were in possession of the Nebraska parcel in 2002 and whether the Curtises received or had notice of the tax foreclosure proceedings.
Actual possession, defined by the Nebraska Supreme Court, means `actual, open, visible possession or occupancy in fact, exactly that and nothing less, as distinguished from constructive possession." Durfee v. Keiffer, 168 Neb. 272, 284, 95 N.W.2d 618, 626 (1959). Giff argues that the Curtises were not in possession of the Nebraska parcel. Giff claims that the Curtises are nonresident trespassers because they did not occupy, improve, or reside on the Nebraska parcel. However, Giff adduced no evidence to support this argument. Giff's father, in an affidavit, stated that he entered the property on one undefined occasion and was not excluded and that he observed a fence on the state line, which, even if true, hardly conclusively disproves possession.
The Curtises, on the other hand, adduced evidence that they were in possession at the time of the tax sale. Pictures offered by the Curtises of the Nebraska and Iowa parcels date from 2000 and 2001. Remembering that the two parcels form a single residential lakefront lot, irrespective of the legal nuances, these pictures show that the properties were being maintained and that a chain link fence is common to both parcels. From these pictures, the fence does not appear to be on the state line, but, rather, on the edges of the yard. The northern side of the fence appears very near the water line of Carter Lake. Sandra stated in her affidavit that she and Charles
have also occupied, kept, maintained and improved the property north of the house all the way to the lake, including putting a new roof, decking, and door panels on the boat house, repairing the boat lift, repairing and rebuilding the railroad tie retaining wall on the west side of the property which extends into the lake.
This is certainly actual possession. The way that the backyard is fenced and the repairs done to improvements on the Nebraska parcel clearly make the Curtises' possession open and visible to any reasonable person as well. We therefore find the Curtises were in actual possession of the Nebraska parcel at the time of the tax foreclosure sale.
We now turn to whether the Curtises had notice of the tax foreclosure proceedings. The law is well settled that there is no presumption of valid service contained in the statutes governing sheriff's deeds that follow a tax foreclosure sale. Pilot Investment Group v. Hofarth, 250 Neb. 475, 550 N.W.2d 27 (1996); Brown v. Glebe, 213 Neb. 318, 328 N.W.2d 786 (1983). See Neb. Rev. Stat. §§ 77-1901 through 77-1941 (Reissue 2003). Giff did not introduce any evidence to dispute in any way the evidence adduced by the Curtises that they did not have actual notice.
Giff argues that constructive notice by publication is sufficient because the Curtises were nonresidents of the State of Nebraska and, therefore, could not have been served in Nebraska. Giff cites Durfee, supra, as support for this contention. However, in that case, there was little evidence of possession, and the person claiming entitlement to notice was a landlord who was found to have only constructive possession. This case can easily be distinguished from Durfee, because the Nebraska parcel here is directly adjacent to the Curtises' house and in reality becomes part of where they live. There is clear evidence that anyone, upon inquiry, could have discovered the Curtises had an interest in the Nebraska parcel because of the close proximity of their house and the appearance of the yard and fence. Here, service could have been made in Nebraska; the Curtises were clearly in possession of their backyard, which is in Nebraska.
Because the Curtises were in actual possession of the Nebraska parcel, they were entitled to actual notice of the tax foreclosure proceedings. Because they did not receive notice, the tax sale and subsequent sheriff's deed to Giff are void. See, Brown v. Glebe, 213 Neb. 318, 328 N.W.2d 786 (1983); Sileven v. Tesch, 212 Neb. 880, 326 N.W.2d 850 (1982). As a result, Giff never acquired valid title to the Nebraska parcel. A void judgment is not binding upon the person against whom it is rendered, gives no new rights or better position to a person in whose favor it professes to be, and cannot be a source of title. See Hassett v. Durbin, 132 Neb. 315, 271 N.W. 867 (1937). As such, Giff cannot maintain an action for quiet title or ejectment or slander of title against the Curtises or Chase, and such parties are entitled to judgment as a matter of law. See, Neb. Rev. Stat. § 25-2124 (Cum. Supp. 2006); K & K Farming v. Federal Intermediate Credit Bank, 237 Neb. 846, 468 N.W.2d 99 (1991) (stating that to maintain ejectment action, plaintiff must show legal interest in property, entitlement to possession therein, and that defendant unlawfully keeps plaintiff out of possession). See, also, Norton v. Kanouff, 165 Neb. 435, 86 N.W.2d 72 (1957) (stating action for slander of title is based upon false and malicious statement, oral or written, made in disparagement of person's title to real or personal property, resulting in special damage).
Giff further attacks the method in which the Curtises void the tax sale by arguing that the Curtises should have reopened the judgment and defended the foreclosure action pursuant to Neb. Rev. Stat. § 25-525 (Cum. Supp. 2006) or pursuant to an action for redemption. However, this argument has no merit. See, Thomas v. Flynn, 169 Neb. 458, 100 N.W.2d 37 (1959) (stating that owner or occupant may redeem from tax sale prior to issuance of valid tax deed); Hassett v. Durbin, supra (stating § 25-525 has no reference to void judgment). An action to quiet title in equity is an appropriate method of attacking a tax foreclosure sale.
A void judgment may be entirely disregarded upon having its jurisdictional infirmity exposed. Proceedings in equity are peculiarly appropriate for the exposure of this infirmity, and after full opportunity has been given to those who seek to sustain as well as to those who seek to avoid the judgment, if it satisfactorily appears that the defendant was not summoned, and had no notice of the suit, a sufficient excuse is shown for his neglect to defend, and equity will not allow the judgment, if unjust, to be used against him, no matter what jurisdictional recitals it contains. 3 Freeman, Judgments (5th ed.) sec. 1228.
Hassett v. Durbin, 132 Neb. at 318, 271 N.W. at 869. It is not necessary to take any steps to have a void judgment reversed, vacated, or set aside. Id.
Giff also argues that the Curtises are barred from asserting their claims because they failed to meet the requirements of Neb. Rev. Stat. § 77-1844 (Reissue 2003). However, this argument is also without merit. See Cornell v. Maverick Loan & Trust Co., 95 Neb. 9, 144 N.W. 1072 (1914) (stating this section does not apply if taxes not due and owing on date of suit).
Giff's remaining assignment of error relates to the applicability of equitable defenses. Giff claims the equitable doctrines of unclean hands, laches, waiver, or collateral estoppel bar the Curtises' claims. However, to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. Malchow v. Doyle, 275 Neb. 530, 748 N.W.2d 28 (2008). Giff did not specifically argue any of these defenses, and they will not be considered here.

CONCLUSION
The district court properly granted the Curtises' motion to quiet title in them because they had actual possession of the Nebraska parcel and did not receive notice of the tax foreclosure proceedings. The quitclaim deed, recorded on November 21, 2005, effectively transferred title from Chase to the Curtises; Giff's sheriff's deed is void and unenforceable, and such cloud upon the Curtises' title should be, and is hereby, removed.
AFFIRMED.